OPINION
{¶ 1} Claiming that the trial court erred by denying his pretrial motion to dismiss criminal charges against him, defendant-appellant, Michael Walker, appeals from a judgment of the Franklin County Municipal Court that convicted him of domestic violence. For the reasons set forth below, we affirm the trial court's judgment. *Page 2 
 {¶ 2} According to plaintiff-appellee, State of Ohio ("the state"), on January 1, 2005, defendant punched D.W., his minor child, in the face, which resulted in a cut that required sutures to close. By complaints filed on May 24, 2005, defendant was later charged with: (1) one count of domestic violence, a violation of R.C. 2919.25(A), and a misdemeanor of the first degree; and (2) one count of assault, a violation of R.C.2903.13(A), and a misdemeanor of the first degree. The same day that complaints were filed against defendant, arrest warrants were issued. Approximately ten months later, on March 16, 2006, defendant was arrested pursuant to the previously issued arrest warrants.
 {¶ 3} After his arrest, defendant pled not guilty to the charges against him. Defendant also demanded a jury trial and asserted his right to a speedy trial. Claiming a lack of due diligence in the commencement of the prosecution, two months after his arrest, defendant moved to dismiss the charges against him. The trial court denied this motion.
 {¶ 4} Defendant later waived a jury trial and pled no contest with stipulations to the charge of domestic violence. The trial court thereafter found defendant guilty of domestic violence, and, at the request of the prosecution, the trial court dismissed the assault charge against defendant.
 {¶ 5} From the trial court's judgment, defendant now appeals and assigns three errors for our consideration:
 FIRST ASSIGNMENT OF ERROR
 The Trial Court Abused its Discretion by Overruling Appellant's Motion to Dismiss because Appellant's Sixth Amendment to the United States Constitution Right to a *Page 3 
Speedy Trial was Violated Pursuant to the Balancing Test Established in Barker v. Wingo, 407 U.S. 514 (1972).
 SECOND ASSIGNMENT OF ERROR
 The Trial Court Abused its Discretion in Overruling Appellant's Motion to Dismiss because the State of Ohio Failed to Act with Reasonable Diligence in the Commencement of Prosecution Against Appellant as Required by R.C. § 2901.13(E).
 THIRD ASSIGNMENT OF ERROR
 The Trial Court Abused its Discretion in Overruling Appellant's Motion to Dismiss because the Delay of Almost Five (5) Months between the Incident and the Filing of the Complaint Violated Mr. Walker's Right to a Speedy Trial. U.S. v. Lovasco, 431 U.S. 783 (1977).
 {¶ 6} Crim.R. 11(B)(2) provides that "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." Pursuant to Crim.R. 12(I), "[t]he plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion[.]" See, also, State v. Luna (1982), 2 Ohio St.3d 57
(finding that a plea of no contest pursuant to a negotiated plea agreement did not constitute waiver of a defendant's right, under former Crim.R. 12, to appeal a trial court's rulings on pretrial motions).
 {¶ 7} Accordingly, here, defendant's plea of no contest does not preclude defendant from asserting in this appeal that the trial court prejudicially erred by denying his pretrial motion for dismissal of the charges against him. Crim.R. 12(I); Luna, supra. *Page 4 
 {¶ 8} At a hearing before the trial court to consider defendant's motion to dismiss, defense counsel proffered evidence, which the assistant city attorney clarified, and to which the parties agreed. Thus, in the present case, the relevant facts underlying the state's delay in filing complaints against defendant and its delay in arresting him are not in dispute.
 {¶ 9} Because the relevant facts are not in dispute, defendant's assignments of error essentially resolve to claims that the trial court's denial of defendant's motion to dismiss violates Ohio law and conflicts with precedents of the United States Supreme Court. As defendant's assignments of error present questions of law, de novo appellate review is therefore required. See State v. Linnen, Franklin App. No. 04AP-1138, 2005-Ohio-6962, at ¶ 9 (Sadler, J., concurring in part and dissenting in part), citing Wiltberger v. Davis (1996),110 Ohio App.3d 46, 51-52 (finding that appellate review of a question of law is de novo); see, also, State v. Nixon, 165 Ohio App.3d 178,2006-Ohio-72, at ¶ 8, citing State v. Stallings, 150 Ohio App.3d 5,2002-Ohio-5942, at ¶ 6, citing State v. Benton (2000),136 Ohio App.3d 801, 805 (stating that "[a] denial of a motion to dismiss is reviewed de novo"); Akron v. Molyneaux (2001), 144 Ohio App.3d 421, 426, dismissed, appeal not allowed by, 93 Ohio St.3d 1473, citing Benton, at 805 (reviewing trial court's denial of motion to dismiss under de novo standard of review). Cf. State v. Selvage (1997), 80 Ohio St.3d 465, 470
(holding that trial court did not abuse its discretion when it determined that the appellee was deprived of right to speedy trial underSixth Amendment); State v. Stamper, Lawrence App. No. 05CA21, 2006-Ohio-722, at ¶ 12 (finding that appellate review of a trial court's decision regarding a motion to dismiss for a *Page 5 
speedy trial violation involves a mixed question of law and fact);State v. Angus, Ross App. No. 05CA2880, 2006-Ohio-4971, at ¶ 6.
 {¶ 10} "`[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision.' " Koehring v. Ohio Dept. of Rehab. Corr., Franklin App. No. 06AP-396, 2007-Ohio-2652, at ¶ 10, quoting BP CommunicationsAlaska, Inc. v. Cent. Collection Agency (2000), 136 Ohio App.3d 807,812, dismissed, appeal not allowed, 89 Ohio St.3d 1464, citing Hall v.Ft. Frye Loc. School Dist. Bd. of Edn. (1996), 111 Ohio App.3d 690, 694. Cf. Stamper, at ¶ 12 (stating that appellate review of a mixed question of law and fact requires an appellate court to accord due deference to a trial court's factual findings if supported by competent, credible evidence and to independently review whether a trial court properly applied the law to the facts of the case); Angus, at ¶ 6.
 {¶ 11} Because defendant's first and third assignments of error are interrelated, we shall jointly address them.
 {¶ 12} According to the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" Cf. Section 10, Article I, Ohio Constitution (independently guaranteeing the right to a speedy trial); R.C. 2945.71 (setting forth time within which trial must be held). See, also, State v. O'Brien (1987),34 Ohio St.3d 7, 8 (stating that "for purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71 et seq. and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive"); State v. *Page 6 Bayless, Franklin App. No. 02AP-215, 2002-Ohio-5791, at ¶ 10, appeal not allowed (2003), 98 Ohio St.3d 1480, 2003-Ohio-974.
 {¶ 13} The right to a speedy trial under the Sixth Amendment is fundamental and imposed on the states by the Due Process Clause of theFourteenth Amendment to the United States Constitution. Klopfer v. N.Carolina (1967), 386 U.S. 213, 87 S.Ct. 988; Smith v. Hooey (1969),393 U.S. 374, 89 S.Ct. 575; Barker v. Wingo (1972), 407 U.S. 514, 515,92 S.Ct. 2182. In Hooey, the United States Supreme Court explained that the constitutional right to a speedy trial "has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: '(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself.' " Id. at 377-378, quoting United States v. Ewell, 383 U.S. 116, 120,86 S.Ct. 773. (Footnote omitted.)
 {¶ 14} Stating that "[i]n our view * * * the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an `accused[.]` " U. S. v. Marion (1971), 404 U.S. 307, 313,92 S.Ct. 455, the Marion Court held that "[i]t is readily understandable that it is either a formal indictment or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of theSixth Amendment." Id. at 320. Cf. State v. Meeker (1971), 26 Ohio St.2d 9, paragraph three of the syllabus (holding that "[t]he constitutional guarantees of a speedy trial are applicable to unjustifiable delays in commencing prosecution, as well as to unjustifiable delays after indictment"); State v. Luck (1984), 15 Ohio St.3d 150, 153, certiorari denied (1985), 470 U.S. 1084, *Page 7 105 S.Ct. 1845, rehearing denied (1985), 471 U.S. 1095, 105 S.Ct. 2170 (stating that "in light of Marion and its progeny, our holding in Meeker is viable only insofar as its application is limited to cases that are factually similar to it").
 {¶ 15} In Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, rejecting inflexible approaches to speedy trial challenges, id. at 529-530, the United States Supreme Court adopted "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." Id. at 530. (Footnote omitted.) The Barker court stated:
 A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. * * *
Id. (Footnote omitted.) See, also, Doggett v. United States (1992),505 U.S. 647, 651, 112 S.Ct. 2686 (discussing four separate inquiries underBarker).
 {¶ 16} The Barker court explained that "[t]he length of delay is to some extent a triggering mechanism," id. at 530, and "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for further inquiry into the other factors that go into the balance." Id. "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." Id. at 530-531. But, see,State v. Madden, Franklin App. No. 04AP-1228, 2005-Ohio-4281, at ¶ 53, appeal not allowed (2006), 108 Ohio St.3d 1415, 2006-Ohio-179, citingDoggett, at 652, fn. 1 (acknowledging that "[c]ourts have generally found that a delay approaching one year becomes `presumptively prejudicial' "). *Page 8 
 {¶ 17} In Doggett, construing Barker, the United States Supreme Court further explained:
 * * * Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay * * * since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. * * * This latter enquiry is significant to the speedy trial analysis because * * * the presumption that pretrial delay has prejudiced the accused intensifies over time. * * *
Id. at 651-652.
 {¶ 18} "Closely related to length of delay is the reason the government assigns to justify the delay." Barker, at 531. "[Different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." Id. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." Id.
 {¶ 19} In Doggett, the Supreme Court also explained:
 Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. * * * *Page 9 
 Barker made it clear that "different weights [are to be] assigned to different reasons" for delay. * * * Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, * * * and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.
 To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. * * *
Id. at 656-657.
 {¶ 20} "Whether and how a defendant asserts his right is closely related to the other factors[.]" Barker, at 531. "The strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." Id. The Barker court explained:
 * * * The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the *Page 10 
right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
Id. at 531-532.
 {¶ 21} Under Barker, the fourth factor to be weighed by a court is prejudice. Id. at 532. A court should assess prejudice "in the light of the interests of defendants which the speedy trial right was designed to protect[,]" id., which are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. (Footnote omitted.) Of these interests, the most serious is limiting the possibility that the defense will be impaired, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." Id.
 {¶ 22} The Barker court further instructed:
 We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.
Id. at 533. *Page 11 
 {¶ 23} Here, complaints were filed against defendant on May 24, 2005, and arrest warrants were issued the same day. Thus, underMarion, defendant's right to a speedy trial under the Sixth Amendment to the United States Constitution, as applied to the states by theFourteenth Amendment to the United States Constitution, attached as of May 24, 2005. Id. at 320.
 {¶ 24} Approximately ten months later, on March 16, 2006, defendant was arrested. Such a delay arguably is presumptively prejudicial. SeeSelvage, supra, at 469-470 (finding that 13-month delay between commission of alleged offenses and indictment, and ten months after filing of criminal complaint violated right to speedy trial underSixth Amendment); Madden, at ¶ 53 (stating that "[c]ourts have generally found that a delay approaching one year becomes `presumptively prejudicial' "); State v. Sears, 166 Ohio App.3d 166, 2005-Ohio-5963, at ¶ 12, appeal not allowed (2006), 109 Ohio St.3d 1405, 2006-Ohio-1703 (finding nine-month delay between filing of complaint and a defendant's arrest was presumptively prejudicial). But, see, State v. Bordreau (Apr. 7, 1988), Franklin App. No. 87AP-688, cause dismissed, 38 Ohio St.3d 714
(noting that some courts would deem nine and one-half month delay to be presumptively prejudicial but Ohio authority exists to the contrary);State v. Carter (Apr. 1, 1998), Lorain App. No. 97CA006703 (finding nine-month delay between indictment and service was not presumptively prejudicial for speedy trial purposes); State v. Hilyard, Vinton App. No. 05CA598, 2005-Ohio-4957, at ¶ 18, appeal not allowed (2006),108 Ohio St.3d 1417, 2006-Ohio-179 (finding that, under the circumstances of that case, 11-month delay between arrest and conviction was not presumptively prejudicial); State v. Grant (Nov. 10, *Page 12 
1999), Lorain App. No. 98CA007038 (finding 11-month delay between indictment and service was not presumptively prejudicial).
 {¶ 25} The state's inaction appears to have caused the delay between the filing of the complaints and defendant's arrest. Although a detective of the Columbus Division of Police knew where defendant resided in Toledo, Ohio, at the time that he swore complaints against defendant, this detective and other police officers failed to notify law enforcement authorities in Toledo of the outstanding arrest warrants against defendant because, as a matter of police custom, Columbus police officers did not notify other law enforcement authorities about outstanding misdemeanor arrest warrants due to a purported personnel shortage.
 {¶ 26} Such inaction by police must be weighted against the state "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, at 531; see, also, id. at 527 (stating that "[a] defendant has no duty to bring himself to trial; the State has the duty as well as the duty of insuring that the trial is consistent with due process"). If we were to ignore the state's inaction in this case, we risk encouraging the state to gamble with the interests of criminal suspects who are assigned a low prosecutorial priority, thereby possibly penalizing a defendant for the state's inaction. See Doggett, at 657 (stating that "[c]ondoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority").
 {¶ 27} Although state inaction falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has *Page 13 
begun, Doggett, at 657, here, for the reasons discussed within, we cannot conclude that, after weighing all the Barker factors, defendant's prejudice was so serious that he was deprived of his federal constitutional right to a speedy trial.
 {¶ 28} Doggett instructs that "toleration of * * * negligence varies inversely with its protractedness * * * and its consequent threat to the fairness of the accused's trial." Id. Unlike Doggett, where the petitioner's right to a speedy trial was violated because, among other things, the petitioner was arrested eight and one-half years (102 months) after his indictment and apparently was unaware of his indictment, see Doggett, at 650, 652-653, here, defendant was arrested approximately ten months after complaints were filed against him and was informed by the victim's mother on more than one occasion that an arrest warrant was supposed to be sent to Toledo law enforcement authorities. Cf. Doggett, at 653 (observing that if petitioner had known of his indictment years before he was arrested, then Barker's third factor concerning invocation of the right to a speedy trial would be weighed heavily against petitioner).
 {¶ 29} Accordingly, the facts of this case are distinguishable fromDoggett. Therefore, defendant's reliance upon Doggett as justifying dismissal of the complaints against him or as justifying the vacation of his sentence is unconvincing.
 {¶ 30} A "defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." Barker, at 528. "The strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." Id. at 531. *Page 14 
 {¶ 31} Here, although defendant asserted his right to speedy trial at his arraignment, for whatever reasons, defendant delayed seeking dismissal of the charges for two months following his arrest and arraignment on grounds that his right to a speedy trial was violated. Such a two-month delay must be weighted, at least to some extent, against defendant's claim of a serious deprivation of his right to a speedy trial. See, e.g., id. (stating that "[t]he more serious the deprivation, the more likely a defendant is to complain").
 {¶ 32} Also, assessing prejudice in light of the interests that the speedy trial right was designed to protect, namely (1) to prevent oppressive pretrial incarceration, (2) to minimize a defendant's anxiety and concern, and (3) to limit possible impairment of a defense, seeBarker, at 532, we cannot conclude that, under the facts of this case, defendant was so prejudiced as to violate his right to a speedy trial under the Sixth Amendment.
 {¶ 33} Here, although defendant certainly was prejudiced to some extent by living under a cloud of suspicion since May 2005, defendant's ability to gather evidence, contact potential witnesses, or otherwise prepare his case, was not hindered, as the mother of the child victim had informed defendant on more than one occasion that an arrest warrant was supposed to be sent to Toledo law enforcement authorities, and, thus, defendant presumably had some knowledge that criminal charges might be forthcoming.
 {¶ 34} Also, despite defendant's claims that the delay in prosecution possibly may have tainted potential witnesses' memories and allowed physical injuries to heal, defendant asserts no claim that any of his witnesses died or otherwise became unavailable owing to the delay of his trial. See, e.g., Barker, at 532 (stating that "[i]f *Page 15 
witnesses die or disappear during a delay, the prejudice is obvious"). Also, notwithstanding an approximate ten-month delay between the filing of complaints against defendant and defendant's arrest, defendant makes no affirmative showing of any particularized trial prejudice. SeeDoggett, at 657 (stating that "[t]o be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice").
 {¶ 35} Here, both defendant's and the state's ability to prepare cases was potentially weakened by possible lapses of memory and possible loss of physical evidence. See, e.g., Marion, at 321-322 (stating that "[p]assage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. * * * Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case").
 {¶ 36} Moreover, defendant's deprivation of liberty prior to trial, although not insignificant, was relatively brief as defendant was jailed for approximately one or two days before he was released on his own recognizance. Thus, unlike a defendant who faces a lengthy pretrial incarceration, defendant was not hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. SeeBarker, at 532-533. Because defendant was released on his own recognizance, he also was not faced to the same extent with disruptions to family life and employment, which may accompany a lengthy pretrial incarceration. Id.
 {¶ 37} Therefore, recognizing that the Barker factors have no talismanic qualities, and fully recognizing that defendant's interest in a speedy trial is specifically affirmed in *Page 16 
the United States Constitution, after balancing the Barker factors, we conclude that, under the particular facts of this case, defendant was not deprived of his right to a speedy trial under the Sixth Amendment to the United States Constitution, as applied to the states through theFourteenth Amendment to the United States Constitution.
 {¶ 38} Accordingly, for the reasons stated above, defendant's first assignment of error is overruled.
 {¶ 39} By his third assignment of error, defendant asserts that the trial court's denial of his motion to dismiss conflicts with UnitedStates. v. Lovasco (1977), 431 U.S. 783, 97 S.Ct. 2044, rehearing denied, 434 U.S. 881, 98 S.Ct. 242.
 {¶ 40} In Lovasco, the United States Supreme Court considered whether a delay between the commission of an offense and the initiation of prosecution deprived the respondent of due process. Id. at 784. Discussing Marion, the Lovasco court observed:
 [In Marion], [w]e * * * note[d] that statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide "` the primary guarantee, against bringing overly stale, criminal charges.' " * * * But we did acknowledge that the "statute of limitations does not fully define (defendants') rights with respect to the events occurring prior to indictment" * * * and that the Due Process Clause has a limited role to play in protecting against oppressive delay.
Id. at 789. (Citations omitted.) See, also, U. S. v. MacDonald (1982),456 U.S. 1, 8, 102 S.Ct. 1497, 1501 (stating that "[t]he Sixth Amendment right to a speedy trial is * * * not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations"); Doggett, at 655, fn. 2 (stating that "[w]e leave intact our earlier observation * * * that a *Page 17 
defendant may invoke due process to challenge the delay both before and after official accusation").
 {¶ 41} In Lovasco, relying on Marion, the respondent seemed to argue that due process barred prosecution whenever a defendant suffered prejudice as a result of a pre-indictment delay. Id. at 789. Disagreeing with respondent, the Lovasco court stated that "Marion makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Id. at 790. The Lovasco court also stated:
 In Marion we conceded that we could not determine in the abstract the circumstances in which preaccusation delay would require dismissing prosecutions. * * * More than five years later, that statement remains true. Indeed, in the intervening years so few defendants have established that they were prejudiced by delay that neither this Court nor any lower court has had a sustained opportunity to consider the constitutional significance of various reasons for delay. We therefore leave to the lower courts, in the first instance, the task of applying the settled principles of due process that we have discussed to the particular circumstances of individual cases. We simply hold that in this case the lower courts erred in dismissing the indictment.
Id. at 796-797. (Citation and footnote omitted.)
 {¶ 42} Prior cases of the United States Supreme Court "have held the provision that `[n]o State shall … deprive any person of life, liberty, or property, without due process of law,' * * * to `guarante[e] more than fair process,' * * * and to cover a substantive sphere as well, `barring certain government actions regardless of the fairness of the procedures used to implement them.' " County of Sacramento v. Lewis
(1998), 523 U.S. 833, 840, 118 S.Ct. 1708. (Citations omitted.) *Page 18 
 {¶ 43} The Lewis Court explained:
 We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of the government," * * * whether the fault lies in a denial of fundamental procedural fairness, * * * or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective * * * While due process protection in the substantive sense limits what the government may do in both its legislative * * * and its executive capacities * * * criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.
 Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be "arbitrary in the constitutional sense" * * *[.]
 * * *
 [T]he substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." While the measure of what is conscience shocking is no calibrated yard stick, it does * * * "poin[t] the way." * * *
Id. at 845-847.
 {¶ 44} Here, defendant does not make any showing of actual or particularized trial prejudice, only potential prejudice, arising from the delay between the incident at issue and the filing of complaints. See Lovasco, at 790 (stating that "Marion makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused").
 {¶ 45} Also, here, the delay in filing complaints against defendant does not necessarily appear to be at variance with customary promptness under the facts and *Page 19 
circumstances of this case. According to the evidence, after receiving a referral from Franklin County Children Services on January 3, 2005, a police detective reviewed the referral, contacted a case worker, and also contacted the mother of the minor child and the minor child himself. At a hearing, the detective testified that he also attempted to contact defendant via regular U.S. mail to gather defendant's version of the events surrounding the alleged punching, but he did not receive a response from defendant. According to the detective, after receiving no response from defendant, the detective determined that probable cause did not exist to file charges at that point.
 {¶ 46} A police investigation report also reveals that, beginning on February 27, 2005, this detective sought written consent from the victim's mother to have the victim's medical records released to the police. The detective received no response to either his telephone inquiry or written inquiry for consent to obtain the medical records. On April 26, 2005, the detective interviewed the child victim. Based on this interview, the detective found probable cause to charge defendant with domestic violence and assault. Approximately one month later, on May 24, 2005, this detective swore complaints against defendant.
 {¶ 47} Although there were delays in the police investigation, we cannot conclude that, under the particular facts and circumstances of this case, the pre-accusation delay of almost five months necessarily was unjustified or that defendant was deprived of due process based on this pre-accusation delay. Defendant's contention that the trial court's denial of defendant's motion to dismiss conflicts with Lovasco is not well-taken.
 {¶ 48} Accordingly, we overrule defendant's third assignment of error. *Page 20 
 {¶ 49} Defendant's second assignment of error claims that the trial court's denial of his motion to dismiss conflicts with R.C. 2901.13(E) and constitutes reversible error. We disagree.
 {¶ 50} R.C. 2901.13(E),[1] at all times relevant to the proceedings at issue, provided:
 A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. A prosecution is not commenced by the return of an indictment or the filing of an information unless reasonable diligence is exercised to issue and execute process on the same. A prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same.
 {¶ 51} According to R.C. 2901.13(A)(1),[2] which was in effect at all times relevant to the proceedings at issue:
 Except as provided in division (A)(2) or (3) of this section or as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed:
 * * *
 (b) For a misdemeanor other than a minor misdemeanor, two years[.]
 {¶ 52} Here, by complaints filed on May 24, 2005, defendant was charged with domestic violence and assault, misdemeanors of the first degree, for offenses that were *Page 21 
committed on January 1, 2005. See, generally, R.C. 2919.25 (domestic violence) and former 2903.13 (assault);[3] see, also, R.C. 2901.02(F) and (G) (classifying misdemeanor and minor misdemeanor). Less than two years after the alleged offenses were committed, defendant was convicted of the domestic violence charge, and the assault charge was dismissed. Thus, for purposes of R.C. 2901.13, which was then in effect, the prosecution of defendant was commenced within two years, and this prosecution was not barred under the version of R.C. 2901.13(A)(1)(b), which was then in effect.
 {¶ 53} Defendant argues, however, that, absent exercise of reasonable diligence by the state, the state's action against defendant properly should have been dismissed under R.C. 2901.13. We cannot agree.
 {¶ 54} For statute of limitations purposes, former R.C. 2901.13(E) provided, in part, that "[a] prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercised to execute the same." Under former R.C.2901.13(A)(1)(b), prosecution of a misdemeanor was required to be commenced within two years after the offense was committed, and if such prosecution were not commenced within two years after the offense was committed, such prosecution was barred.
 {¶ 55} Here, even assuming that prior to defendant's arrest the state failed to use reasonable diligence to execute the arrest warrants against him, the prosecution of defendant commenced within two years as he was accused of committing the offenses on January 1, 2005, and his case was adjudicated in July 2006. Thus, under the particular facts of this case, for purposes of R.C. 2901.13, whether the prosecution exercised *Page 22 
reasonable diligence under division (E) of R.C. 2901.13 is immaterial as defendant was prosecuted within the applicable statute of limitations. Cf. State v. Morris (1984), 20 Ohio App.3d 321 (finding that because no effort was made to execute a warrant within two years after the offense was alleged to have been committed, the prosecution was not commenced and the prosecution was barred).
 {¶ 56} Because the prosecution was commenced within the two-year period as required under the statute, we therefore cannot conclude that the trial court erred, as a matter of law, by denying defendant's motion to dismiss for the state's purported failure to comply with former R.C.2901.13(E).
 {¶ 57} For the reasons set forth above, defendant's second assignment of error is overruled.
 {¶ 58} For the foregoing reasons, all three of defendant's assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
SADLER, P.J., and BROWN, J., concur.
[1] After the incident in January 2005 and after defendant's arrest in March 2006, R.C. 2901.13 was amended twice. See (2005) Am. Sub. S.B. No. 9, effective April 14, 2006; (2006) Am. Sub. S.B. No. 17, effective August 3, 2006. Division (E) of R.C. 2901.13, however, was unaffected by these amendments.
[2] After the incident in January 2005 and after defendant's arrest in March 2006, R.C. 2901.13 was amended twice. See (2005) Am. Sub. S.B. No. 9, effective April 14, 2006; (2006) Am. Sub. S.B. No. 17, effective August 3, 2006. Division (A) of R.C. 2901.13, however, was unaffected by these amendments.
[3] R.C. 2903.13, assault, was amended by (2006) Sub. H.B. No. 347, effective March 14, 2007. *Page 1