[Cite as *E.W. v. T.W.*, 2017-Ohio-8504.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

E.W.,                                                                      :

      Petitioner-Appellee,                          :

                                                    No. 16AP-88

v.                                                                         :          (C.P.C. No. 16DV-0152)

T.W.,                                                                      :          (ACCELERATED CALENDAR)

      Respondent-Appellant.                        :

---

D E C I S I O N

Rendered on November 9, 2017

---

**On brief:** *Kerns & Sims, LLC*, and *Ralph A. Kerns*, for appellant. **Argued:** *Ralph A. Kerns.*

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

SADLER, J.

{¶ 1} Respondent-appellant, T.W. ("respondent"), appeals from the judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, issuing a civil protection order ("CPO") to petitioner-appellee, E.W. ("petitioner"). For the following reasons, the trial court judgment is reversed and this cause is remanded with instructions.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Petitioner and respondent are unmarried parents of one minor child. On January 29, 2016, petitioner filed for a CPO against respondent. Petitioner included the following as respondent's acts of domestic violence in her petition for the CPO:

> I terrified of my child's father [T.W.] because he pops up at my home to view any company I may have and to learn my schedule. Although it's just my baby and me, no pets I

[illegible] have company. He is threatening to continue to pop up. In the beginning of this year my deadlock top lock was really loose to the point of comming off and the 1st person I thought of was [T.W.]. I'm not saying [T.W] did it but his constant [illegible] and threats has put fear for him in my heart. No, he hasn't hit me this year, last year and below he has smacked me, shoved me against property and verbally threatened to kill me twice. Also he has threatened to take our child out of the state. I began this CPO 2015, the only reason I did not pursue the completion is because I was fearful of loosing my job to the several court days that may interferr with my work schedule. Our lives is more precious. Also I spoke to both of my supervisors. Now I refuse to go to [T.W's] home without an officer present to exchange our child. He tells me to come to his home, I respond No [T.W.] let's meet at Burger King our safe designated place to do the exchange. [T.W.] says often he doesn't have gas to make it to Burger King. This is why I chose to move across town.

(Sic passim.) (Addendum to Petition for CPO at 1.)

{¶ 3} The trial court granted an ex parte temporary CPO the same day, and a full hearing on the CPO was held on February 5, 2016. At the hearing, both petitioner and respondent proceeded pro se. According to petitioner, she was driven to pursue the CPO because she was afraid "since now [they're] going through a lot with the custody issue," respondent had threatened to kill her twice in the past, and she was afraid that respondent was showing up at her condo complex and may have tampered with the master lock to her condo. (Tr. at 10.) Petitioner also testified that respondent was threatening to take her daughter out of state.

{¶ 4} Regarding custody issues, petitioner testified that under the court order for parenting in place at that time, petitioner was the residential and legal custodian of their daughter, while respondent had their daughter every Wednesday evening and every other weekend. Both parties faced allegations of contempt of that order, and a March 8, 2016 court date was set to address parenting allocation.

{¶ 5} Petitioner identified two specific prior incidents where respondent threatened to kill her: one in July 2015 and one in September 2015. In the July incident, petitioner testified that respondent sent her a voice/text message in which he threatened to kill her after becoming angry regarding their daughter breaking her finger at daycare.

In the September incident, petitioner testified that she and respondent were exchanging their daughter in the parking lot of Burger King when petitioner expressed safety concerns over respondent playing with the child in the middle of the parking lot. According to petitioner, respondent told her that if she kept continuing to come between him and his child he would "break [petitioner's] face," which made her "real scared."  (Tr. at 6.)

{¶ 6}   Petitioner further testified that respondent showed up to her condo complex at some point in 2015 when they were supposed to meet at Burger King to exchange their child and told her he had a right to know where she was staying.  According to petitioner, she walked to the car and told him "[d]o not come back over."  (Tr. at 11.)  Since that incident, petitioner saw what she believed to be respondent's car "about two times" a few spots down from her parking space, and about one month before the CPO hearing, she found her master lock to her condo loosened to the point of falling off.  (Tr. at 12.)

{¶ 7}   According to respondent, he did not send petitioner a threatening message and did not threaten petitioner at Burger King.  He likewise denied going to petitioner's condo complex.  He contended instead that petitioner was "making these things up."  (Tr. at 19.)  At that point, the trial court asked petitioner if she had evidence of the message in which respondent threatened her life.  Petitioner produced and played the message, which states: "Bitch, I hate you to the motherfucking, down to the last nail God made you with, you fucking stupid ass bitch.  Get my daughter and (inaudible) this bullshit.  I'll fucking kill you, you stupid ass bitch."  (Tr. at 21.)  Respondent testified that he did not recall the message and that all he recalled was his daughter's finger being broken after his continuous requests to have her removed from that daycare.  The trial court responded "well, that's a threat.  Threats of harm qualify as domestic violence."  (Tr. at 21.)

{¶ 8}   Respondent asked if he could be allowed to explain and testified that "[i]t"— presumably the statement that he will "kill" petitioner—was "just a single word that might have blurted out in the heat of rage" and that the point of the conversation was the care of his child rather than killing petitioner.  (Tr. at 23, 24.)  The trial court replied that all the words were threatening and menacing.

{¶ 9}   Respondent suggested the message could have been made years ago and asked the trial court to get the date of the message.  The trial court stated that petitioner

had testified the incident happened six months prior to the hearing, in July 2015, in conjunction with their daughter's broken finger at daycare, that respondent had told her just seconds prior that petitioner made everything up, and that the trial court, in weighing credibility, believed petitioner more than respondent.

{¶ 10} While the trial court began to explain her instructions in the CPO, respondent again attempted to challenge the validity of the threats. Respondent stated to petitioner "[j]ust tell the truth. I don't threaten you." (Tr. at 26.) The trial court stated "I need you to stop talking to her. * * * That's not what happens in a Court of Law. All comments are directed to the Judge." (Tr. at 26.) Respondent again challenged the date of the message, suggesting they were "leaving evidence not inspected properly." (Tr. at 29.) The trial court reiterated that it found petitioner's testimony more credible than respondent's and noted that the message references the daughter's injury. Petitioner testified that she had the injury report. When respondent persisted several more times, the trial court stated "[w]e're done." (Tr. at 30.)

{¶ 11} The trial court thereafter granted petitioner's request for a CPO for a period of five years with instructions to strictly comply with court orders for parenting time and exchanges. Respondent filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Respondent presents two assignments of error:

> [1.] THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO GRANT THE RESPONDENT HIS RIGHT TO BE HEARD AND PRESENT EVIDENCE ON THE ISSUES BEFORE THE COURT.
>
> [2.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND DISCRETION IN DETERMINING THAT A THREAT RECEIVED MONTHS EARLIER ROSE TO THE LEVEL OF GRANTING THE PETITIONER A CIVIL PROTECTION ORDER FOR FIVE YEARS AS TO THE RESPONDENT.

## III. STANDARD OF REVIEW

{¶ 13} This court will not reverse the trial court's decision regarding the issuance of a CPO for being contrary to the manifest weight of the evidence if there is some competent, credible evidence going to the essential elements of the case. *J.R. v. E.H.*,

10th Dist No. 16AP-431, 2017-Ohio-516, ¶ 10, citing *Bradley v. Cox*, 10th Dist No. 04AP-118, 2004-Ohio-4840, ¶ 9, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "We presume that the findings of the trial court are correct, because the trial court can view the witnesses and weigh the credibility of the parties' testimony." *Guthrie v. Long*, 10th Dist. No. 04AP-913, 2005-Ohio-1541, ¶ 13, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "[T]he weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact." *Guthrie* at ¶ 13, citing *State v. Jamison*, 49 Ohio St.3d 182 (1990), *cert. denied*, 498 U.S. 881 (1990). "Whether the trial court applied the correct legal standard is a legal issue that we review de novo." *Martin v. Mahr Machine Rebuilding, Inc.*, 11th Dist. No 2015-L-101, 2017-Ohio-1101, ¶ 4. *State v. Walker*, 10th Dist. No. 06AP-810, 2007-Ohio-4666, ¶ 9 (noting that appellate review of a question of law is de novo); *Martin v. Martin*, 10th Dist. No. 13AP-171, 2013-Ohio-5703, ¶ 6. *See also Bellamy v. Montgomery*, 10th Dist. No. 11AP-1059, 2012-Ohio-4304, ¶ 7 (noting that applying the wrong legal standard or misapplying the correct legal standard may constitute an abuse of discretion).

## IV. DISCUSSION

### A. Second Assignment of Error

{¶ 14} Because we find respondent's second assignment of error dispositive to resolving the appeal, we address it first. Under the second assignment of error, respondent contends that the trial court erred in granting petitioner's request for a CPO by determining that a threat received months earlier rose to the level of granting the petitioner a CPO for five years. In respondent's opinion, petitioner presented no evidence that there was a "present threat" and that she was in fear of "imminent physical harm" at the hands of respondent. (Respondent's brief at 5.)

{¶ 15} To receive a CPO, a petitioner must show by a preponderance of the evidence that the petitioner or the petitioner's family or household members are in danger of domestic violence. *Strassel v. Chapman*, 10th Dist. No. 09AP-793, 2010-Ohio-4376, ¶ 6; *Crabtree v. Dinsmoor*, 10th Dist. No. 13AP-342, 2013-Ohio-5797, ¶ 10. Domestic violence, pertinent to this case, includes two basic requirements: (1) showing a threat of force; and (2) that, by that threat of force, the petitioner was placed in fear of imminent serious physical harm. R.C. 3113.31(A)(1)(b).

{¶ 16} The second requirement involves both subjective and objective considerations. *Strassel* at ¶ 9. The subjective test asks whether the petitioner was actually placed in fear of imminent serious physical harm, while the objective test follows whether such fear is reasonable under the circumstances. *Id.*; *A.D. v. B.D.*, 9th Dist. No. 15CA0095-M, 2017-Ohio-229, ¶ 26. The history between the petitioner and the respondent, which may include past acts of domestic violence, bears on the reasonableness of the petitioner's fear of imminent physical harm. *Strassel* at ¶ 20; *Crabtree* at ¶ 13-14.

{¶ 17} Here, in addition to the message whereby respondent told petitioner "I'll fucking kill you," petitioner testified that in September 2015, in a face-to-face encounter with respondent, she got really scared after respondent told her that if she continued to come between him and his daughter, he would "break [petitioner's] face." (Tr. at 6, 21.) Petitioner testified that respondent showed up at her condo and she told him not to return, that what petitioner believed to be respondent's car appeared several more times at her condo complex, and that petitioner's condo door lock had been loosened in January 2016. Thus, less than four months after the face-to-face threat, petitioner filed her petition for the CPO in the context of custody conflicts with respondent and an impending court date to address the parenting order. Petitioner testified that the impetus for filing the CPO was not only respondent's threats to take the child out of state but because of their present custody issues and her belief and fear of him showing up at her condo in light of his prior threats to physically harm her.

{¶ 18} The key determination is whether petitioner's CPO is supported by the evidence considering the several month time frame between the prior threats of force and when she filed the CPO petition. In other words, was petitioner, by a threat of force, placed in fear of *imminent* serious physical harm under these circumstances? The trial court, referring to the message, simply states "that's a threat. Threats of harm qualify as domestic violence." (Tr. at 21.) There is no indication that the trial court considered petitioner's subjective fear or whether this fear was objectively reasonable under the circumstances of this case. As indicated above, the trial court makes no findings in this respect nor makes reference to the correct standard. Therefore, on the facts of this case,

we find the trial court applied the incorrect legal standard under R.C. 3113.31(A)(1)(b) in issuing the CPO.

{¶ 19} Considerations of weight of the evidence, credibility of the witnesses, and reasonableness are generally issues for the trier of fact. *J.R.* at ¶ 10; *Stenger v. Timmons*, 10th Dist. No. 10AP-528, 2011-Ohio-1257, ¶ 7. Unlike in *J.R.*, the trial court here did not discuss or make findings of fact regarding whether petitioner was placed in fear of imminent serious physical harm by a threat of force which occurred several months prior to the CPO filing. Therefore, we remand the case to the trial court to consider this issue in the first instance.

{¶ 20} Accordingly, respondent's second assignment of error is sustained.

### B. First Assignment of Error

{¶ 21} Under the first assignment of error, respondent contends that the trial court erred as a matter of law by failing to grant the respondent his right to be heard and present evidence on the issues before the court. Because we have sustained the second assignment of error, respondent's first assignment of error is rendered moot. *State v. Gaven*, 10th Dist. No. 16AP-645, 2017-Ohio-5524, ¶ 22; *RDSOR v. Knox Cty. Auditor*, 5th Dist. No. 07-CA-12, 2008-Ohio-897, ¶ 27.

## V. CONCLUSION

{¶ 22} For the foregoing reasons, respondent's second assignment of error is sustained, and respondent's first assignment of error is rendered moot. We reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, and this cause is remanded to that court with instructions to (1) vacate its February 5, 2016 judgment, (2) schedule a new full hearing for a date that is within ten court days after filing of the judgment entry in this appeal, consistent with the requirement to schedule a full hearing within ten court days of the ex parte hearing outlined in R.C. 3113.31(D)(2)(a), unless the court grants a continuance consistent with the same statute; and (3) conduct the new full hearing in accordance with this decision.

*Judgment reversed;*
*cause remanded with instructions.*

DORRIAN, J., concurs.
BRUNNER, J., concurs in part and dissents in part.

DORRIAN, J., concurring.

{¶ 23} I concur with the reasoning and conclusion of the lead opinion. However, I would further instruct the trial court that, on remand, the court may, on its own motion or the motion of petitioner-appellee, reinstate the ex parte protection order as it determines appropriate.

BRUNNER, J., concurring in part, dissenting in part.

{¶ 24} I concur with the lead decision in judgment only and would reverse the trial court's decision for different reasons than the majority. I also concur with the lead's instructions to the trial court that it must hold a hearing within ten court days after the filing of the judgment entry in this appeal. Unlike the lead decision, I believe that the trial court denied due process. Thus, I would sustain the first assignment of error, reversing the trial court's decision for that reason, and I would find the second assignment of error moot. Because the lead decision does just the opposite—sustains the second assignment of error and finds the first assignment of error moot—I respectfully dissent in part.

**Facts and Procedural History**

{¶ 25} Since it appears that the lead decision and I hold differences on the salient facts in the record, I explain the facts and procedural history that support this separate opinion.

{¶ 26} Respondent-appellant, T.W. ("respondent"), father of the parties' four-year-old daughter, appeals from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, issuing a civil protection order ("CPO") to petitioner-appellee, E.W. ("petitioner").

{¶ 27} Petitioner filed a petition for a CPO on January 29, 2016. The addendum to the petition states that petitioner is terrified of respondent because he "pops up" at her home. (Jan. 29, 2016 Addendum to CPO.) In the beginning of the year, the lock on her front door was loose. In previous years, she alleged he hit her, pushed her, and threatened to kill her. She alleged he threatened to take the child out of state. On January 29, 2016, petitioner requested an ex parte CPO, which the trial court granted the same day, effective until February 5, 2016.

{¶ 28} The trial court set the matter for a full hearing on February 5, 2016.  At the February 5, 2016 hearing, both parties proceeded pro se.  After swearing in the parties, the trial court asked the petitioner why she filed the petition.  Petitioner responded because she was afraid respondent had been in the parking lot of her condominium, and the lock on her front door was loose one day.  Petitioner stated that respondent threatened her "back in 2000--it was back in the--the first time it was back in 2015." (Feb. 5, 2016 Tr. at 5.)  She explained that he left a voicemail message concerning the child's finger getting broken at daycare.  Then she testified he threatened her a second time in September 2015.  After she told respondent to play at home rather than in a Burger King parking lot, she explained that he told her "if [she] keep[s] continuing to come between him and his child he would break [her] face and [she] got real scared."  (Tr. at 6.)

{¶ 29} The trial court again asked petitioner why she filed the petition and petitioner responded, "I wanted to proceed because he had been threatening since then about taking my baby out of state." (Tr. at 7.)  After a discussion between the trial judge and petitioner about respondent picking the daughter up from daycare on days that were outside of his visitation in the court order, the trial court again asked petitioner why she filed the petition.  Petitioner responded that she was afraid because of the custody case pending for a reallocation of parental rights, and she remembered the threats, her door lock, and seeing his truck in her parking lot.  When the judge asked her if she had seen his truck since she asked him to stop coming to the condominium, petitioner responded she saw his truck approximately two times since.  "[H]e's the only person that I know that drives a burgundy Tahoe.  He has three different trucks.  And then I thought you know, he wasn't in front--he wasn't in my--in my visitors parking spot or my parking spot.  I just assumed, you know, he's probably just trying to see, you know, who –."  (Tr. at 12.) Finally, the judge asked if there were any more reasons supporting filing the petition and she responded there were not.

{¶ 30} The judge then asked respondent if he sent petitioner a text message threatening her or threatened her at Burger King.  He answered no and explained that he was not following the parental time schedule provided in the previous court order because petitioner asked him repeatedly to pick up the daughter from daycare.  After a lengthy

discussion regarding him following the order, the trial court warned him that the magistrate would find him in contempt of court for not following the order when the issue is before the magistrate in a few weeks.

{¶ 31} The trial court then asked petitioner if she had evidence of the threatening text message. The trial court explained to respondent that the only issue before the court at that time was the threats. The petitioner then played a voice mail message for the court, as follows:

> Bitch, I hate you to the motherfucking, down to the last nail God made you with, you fucking stupid ass bitch. Get my daughter and (inaudible) this bullshit. I'll fucking kill you, you stupid ass bitch. (inaudible)

(Tr. at 21.)

{¶ 32} At that point, the trial judge told respondent that petitioner was more credible than he was because he told the court that he did not threaten petitioner. Respondent tried to explain that he did not remember leaving the voicemail message, but he was upset about his daughter's finger being broken. Respondent attempted to find out the date of the recording but the trial court believed petitioner that it happened in July 2015. Respondent again attempted to explain and the trial court played the recording a second time. Respondent again attempted to explain that he was upset about his daughter being hurt. The trial court then stated:

> Okay, now listen. I'm more troubled by the fact that first you told me that was all made up and all lies. I'm most troubled by that because [I] see this is all an assessment of credibility. I've got to assess who I believe the most and now I believe her more than I believe you because I'm pretty sure that you would remember a tirade like that one, unless you do it all the time and so you don't remember them.

(Tr. at 24.)

{¶ 33} After that, the trial court interrupted respondent when he tried to speak and told him he had to follow the court's allocation of visitation time and exchanges of the child were to take place at Burger King. The trial court warned him that if he violated the order, he would be arrested. The trial court journalized its decision in a February 5, 2016

order, granting a CPO to petitioner, effective until February 4, 2021. Respondent filed a timely appeal.

## Analysis

{¶ 34} In his first assignment of error, respondent argues that the trial court erred in granting the petition for a CPO without conducting a "full hearing" as required by R.C. 3113.31.

{¶ 35} "A person seeking a CPO must prove domestic violence or threat of domestic violence by a preponderance of the evidence." *Johnson v. Auls*, 10th Dist. No. 08AP-286, 2008-Ohio-6123, ¶ 5, citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. R.C. 3113.31(A)(1) defines domestic violence as including: (1) attempting to cause or recklessly causing bodily injury, (2) placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of R.C. 2903.211 or 2911.211, (3) committing any act with respect to a child that would result in the child being an abused child as defined in R.C. 2151.031, and (4) committing a sexually oriented offense.

{¶ 36} Threats of force constitute domestic violence for R.C. 3113.31 purposes if the fear resulting from those threats is reasonable. *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, ¶ 21 (10th Dist.). Although the trial court "may consider past acts to determine whether the incident at issue constitutes domestic violence, the issuance of a civil protection order cannot be based solely on previous incidents of alleged domestic violence." *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, ¶ 23 (7th Dist.), citing *Bruner v. Bruner*, 7th Dist. No. 99CA285, 2000-Ohio-2554. Courts use both a subjective test and an objective test to determine the reasonableness of the petitioner's fear. The subjective test "inquires whether the respondent's threat of force actually caused the petitioner to fear imminent serious physical harm." *Fleckner* at ¶ 23. The objective test "inquires whether the petitioner's fear is reasonable under the circumstances." *Id.*

{¶ 37} Courts have expressed the standard of review of CPOs to be abuse of discretion. We have previously explained:

> "[W]hen reviewing whether a trial court properly granted a
> CPO, an appellate court must determine whether sufficient,

> credible evidence supports a finding that the respondent had engaged in acts or threats of domestic violence. This court will not reverse the trial court's decision for being contrary to the manifest weight of the evidence so long as there is some competent, credible evidence going to the essential elements of the case. Further, a reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. If the evidence is susceptible to more than one interpretation, the reviewing court must construe the evidence consistently with the trial court's judgment."

(Citations omitted.) *Fleckner* at ¶ 15, quoting *Kabeer v. Purakaloth*, 10th Dist. No. 05AP-1122, 2006-Ohio-3584, ¶ 7.

{¶ 38} When a petitioner seeks a CPO, " ' the respondent [is enjoined] from further violence against the family or household member.' " *Fleckner* at ¶ 14, quoting *Parrish v. Parrish*, 95 Ohio St.3d 1201, 1204 (2002) (Lundberg, J., dissenting). But as noted, to receive a CPO, the petitioner must demonstrate by a preponderance of the evidence that the petitioner or the petitioner's family or household members is or are in danger of domestic violence. *Crabtree v. Dinsmoor*, 10th Dist. No. 13AP-342, 2013-Ohio-5797, ¶ 10, citing *Felton* at paragraph two of the syllabus. If a trial court grants the petition, it must find " ' sufficient, credible evidence [to] support[] a finding that the respondent had engaged in acts or threats of domestic violence.' " *Crabtree* at ¶ 11, quoting *Downs v. Strouse*, 10th Dist. No. 05AP-312, 2006-Ohio-505, ¶ 10.

{¶ 39} Appellate review of the trial court's decision requires a determination from the record whether the trial court's decision is based on sufficient, credible evidence, and if found, may not result in a reversal of a CPO simply because the appellate court holds a different opinion than the trial court on the evidence and the credibility of witnesses. *Fleckner* at ¶ 15, quoting *Kabeer* at ¶ 7. And if evidence is susceptible to more than one interpretation, the reviewing court must construe the evidence consistently with the trial court. *Id.*

{¶ 40} While R.C. 3113.31 permits the trial court to grant immediate relief through a temporary ex parte order, the trial court is required to schedule a full hearing within ten

court days after an ex parte hearing. R.C. 3113.31(D)(2)(a). But R.C. 3113.31 does not define "full hearing."

{¶ 41} In *Tarini v. Tarini*, 10th Dist. No. 12AP-336, 2012-Ohio-6165, we considered the meaning of "full hearing" as used in R.C. 3113.31. Generally, a full hearing " ' is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken.' " *Tarini* at ¶ 14, quoting *Deacon v. Landers*, 68 Ohio App.3d 26 (4th Dist.1990). " '[W]here the issuance of a protection order is contested, the court must, at the very least, allow for presentation of evidence, both direct and rebuttal, as well as arguments.' " (Footnote omitted.) *Tarini* at ¶ 14, quoting *Deacon* at 30.

{¶ 42} In *Cleveland v. Shaffer*, 112 Ohio App.3d 631 (8th Dist.1996), the trial court's refusal to allow the defendant to present a trial defense, coupled with statements the trial court made before the trial, deprived the defendant of fundamental due process and a fair trial. Here, the trial court determined that the petitioner was more credible than the respondent based on respondent's statement that he did not threaten petitioner. However, after making that determination, the trial court prevented respondent from questioning petitioner or presenting any evidence or a defense or engaging in any argument. Under these circumstances, the trial court's failure to conduct a "full hearing," as contemplated in R.C. 3113.31, is reversible error. Accordingly, I would sustain respondent's first assignment of error.

{¶ 43} In his second assignment of error, respondent contends in part that the threats in evidence before the trial court were not "imminent." R.C. 3113.31 does not define "imminent," and the term must be construed according to its ordinary meaning. *State v. S.R.*, 63 Ohio St.3d 590, 595 (1992).

> "Imminent" means "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." *Webster's Third New International Dictionary* (1969), 1130. "[I]mminence does not require an offender to carry out a threat immediately or be in the process of carrying it out. * * * [C]ivil protection orders are intended to prevent violence before it happens * * *." (Citations omitted.) *Young v. Young*, 2d Dist. No. 2005-CA-19, 2006-Ohio-978, ¶ 105.

*Fleckner* at ¶ 20. "[T]he requirement of 'imminent' fear addresses the reality of the threat rather than the timing of the threat." *Strassell v. Chapman*, 10th Dist. No. 09AP-793, 2010-Ohio-4376, ¶ 27. "The 'staleness' of an incident is not dispositive of whether the incident should be considered because 'the language of R.C. 3113.31(A) does not require evidence of "new" domestic violence before a civil protection order may be issued or continued.' " *Maccabee v. Maccabee*, 10th Dist. No. 98AP-1213 (June 29, 1999), quoting *Trent v. Trent*, 12th Dist. No. CA98-09-014 (May 10, 1999).

{¶ 44} At any new hearing, the trial court is required to use both the subjective and objective tests for determining the imminence of the threat. The subjective test requires an inquiry into whether respondent's threat of force actually caused the petitioner to fear imminent serious physical harm. The objective test requires that the trial court determine " ' whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm.' " *Maccabee,* quoting *Strong v. Bauman*, 2d Dist. No. 17256 (May 21, 1999). The evidence shows that the petitioner testified she was scared by respondent, but the impetus for filing the petition five months after the threat of domestic violence was the fear that respondent would remove their child from the state because they were involved in litigation regarding contempt issues and reassessment of parental rights. Under the objective test, the inquiry is "whether the petitioner's fear is reasonable under the circumstances." *Fleckner* at ¶ 23. Fear from the threat may be reasonable, but fear that respondent will remove the child from the state may not necessarily be a threat of imminent danger of domestic violence.

{¶ 45} Since the necessary determinations relating to respondent's alleged threat are subject to findings of fact and within the province of the trial court to be made at the new hearing on reversal and remand, I would find respondent's second assignment of error is moot.

{¶ 46} "The duty of a court of appeals is to decide controversies between parties by a judgment that can be carried into effect, and the court need not render an advisory opinion on a moot question or a question of law that cannot affect the issues in a case." *Schwab v. Lattimore*, 166 Ohio App.3d 12, 2006-Ohio-1372, ¶ 10 (1st. Dist.), citing *In re Bailey*, 1st Dist. No. C-040014, 2005-Ohio-3039, ¶ 9. " ' "Actions become moot when resolution of the issues presented is purely academic and will have no practical effect on

the legal relations between the parties." ' " *Foster v. Foster*, 10th Dist. No. 11AP-371, 2011-Ohio-6460, ¶ 3, quoting *Saffold v. Saffold*, 8th Dist. No. 72937 (May 13, 1999), quoting *Van Meter v. Van Meter*, 10th Dist. No. 03AP-1107, 2004-Ohio-3390, ¶ 5.

{¶ 47} I would squarely deal with the first assignment of error and thereby decline to decide respondent's second assignment of error, finding it moot, and I would remand for further proceedings in accordance with law and consistent with this opinion.

_____