[Cite as *Peterson v. Butikofer*, 2019-Ohio-2456.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sarah J. Peterson, | : | |
| Petitioner-Appellee, | : | No. 18AP-364 |
| | | (C.P.C. No. 18DV-498) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Aaron D. Butikofer, | : | |
| Respondent-Appellant. | : | |

---

D E C I S I O N

Rendered on June 20, 2019

---

**On brief**: *Anthony W. Greco*, and *Hari K. Sathappan*, for appellee.

**On brief**: *Christopher J. Minnillo*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BROWN, J.

{¶ 1} Aaron D. Butikofer ("husband"), respondent-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, in which the court issued a domestic violence civil protection order ("CPO") in favor of Sarah J. Peterson ("wife"), petitioner-appellee.

{¶ 2} On July 27, 2017, husband and wife married in Anchorage, Alaska. After that date, husband lived in Alaska and wife lived in Columbus, Ohio, until wife moved to Alaska on October 7, 2017. Wife alleged that husband began physically and verbally abusing her soon after she moved to Alaska. On February 28, 2018, wife returned to Ohio

where she claimed husband continued to verbally threaten and harass her via text messages and e-mails.

{¶ 3} On April 19, 2018, while four months pregnant, wife filed a petition for a CPO and the trial court granted an ex parte CPO the same day. The court set a full hearing for April 26, 2018. The court also issued an order to serve, which seemingly indicated two process servers: the sheriff of Anchorage County and Anchorage Judicial Services. On April 24, 2018, a return of service was filed indicating husband was personally served on April 23, 2018.

{¶ 4} In his appellate brief, husband claimed that, after being served the petition for a CPO, he contacted the trial court's bailiff via phone to request a continuance. These communications are not a part of the record before this court.

{¶ 5} On April 26, 2018, the trial court held a full hearing on the petition at which the trial court noted husband called and indicated he would not be present at the hearing. The court held the hearing and granted a CPO on the same day. Husband appeals the trial court's judgment, asserting the following four assignments of error:

> [I.] THE LOWER COURT ERRED IN CONDUCTING A FULL HEARING ON THE PETITION FOR A CIVIL PROTECTION ORDER WITHOUT PROOF OF OUT OF STATE SERVICE OF THE PETITION AND THE *EX PARTE* ORDER OF PROTECTION, WITH NOTICE OF HEARING.
>
> [II.] THE LOWER COURT DID NOT HAVE *IN PERSONAM* JURISDICTION OVER THE APPELLANT AND WAS WITHOUT AUTHORITY TO ISSUE A CIVIL PROTECTION ORDER.
>
> [III.] THE REFUSAL TO GRANT THE APPELLANT A REASONABLE CONTINUANCE DENIED HIM THE OPPORTUNITY TO FULLY PARTICIPATE IN THE HEARING [AS] REQUIRED UNDER R.C. 3113.31, AND THEREBY VIOLATED THE APPELLANT'S RIGHT TO DUE PROCESS.
>
> [IV.] THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING A CIVIL PROTECTION ORDER BASED UPON A LACK OF EVIDENCE TO SUPPORT THE CONCLUSION THAT THE APPELLEE WAS IN DANGER OF DOMESTIC VIOLENCE.

{¶ 6} Husband argues in his first assignment of error that the trial court erred when it conducted a full hearing on the CPO without proof of out-of-state service of the petition and ex parte CPO. Husband contends service was not perfected because the special process server was not appointed in accordance with Civ.R. 4.3 and Loc.R. 41 of the Franklin County Court of Common Pleas, Domestic Relations Division.

{¶ 7}   R.C. 3113.31(D)(2)(a) provides that:

> If the court, after an ex parte hearing, issues an order described in division (E)(1)(b) or (c) of this section, the court shall schedule a full hearing for a date that is within seven court days after the ex parte hearing. If any other type of protection order that is authorized under division (E) of this section is issued by the court after an ex parte hearing, the court shall schedule a full hearing for a date that is within ten court days after the ex parte hearing. The court shall give the respondent notice of, and an opportunity to be heard at, the full hearing. The court shall hold the full hearing on the date scheduled under this division unless the court grants a continuance of the hearing in accordance with this division.

{¶ 8}   Civ.R. 65.1 provides, in pertinent part:

> **(C) Service.**
>
> **(1) Service by clerk.**  The clerk shall cause service to be made of a copy of the petition, and all other documents required by the applicable protection order statute to be served on the Respondent and, if applicable, on the parent, guardian, or legal custodian of the Respondent.
>
> **(2) Initial service.**  Initial service, and service of any ex parte protection order that is entered, shall be made in accordance with the provisions for personal service of process within the state under Civ.R. 4.1(B) or outside the state under Civ.R. 4.3(B)(2). Upon failure of such personal service, or in addition to such personal service, service may be made in accordance with any applicable provision of Civ.R. 4 through Civ.R 4.6.

{¶ 9}   Civ.R. 4.1, "**Process: Methods of service**," provides, in pertinent part:

> All methods of service within this state, except service by publication as provided in Civ.R. 4.4(A), are described in this rule. Methods of out-of-state service and for service in a foreign country are described in Civ.R. 4.3 and 4.5.

\* \* \*

**(B) Personal service.** When the plaintiff files a written request with the clerk for personal service, service of process shall be made by that method.

When process issued from the Supreme Court, a court of appeals, a court of common pleas, or a county court is to be served personally under this division, the clerk of the court shall deliver the process and sufficient copies of the process and complaint, or other document to be served, to the sheriff of the county in which the party to be served resides or may be found. \* \* \* In the alternative, process issuing from any of these courts may be delivered by the clerk to any person not less than eighteen years of age, who is not a party and who has been designated by order of the court to make personal service of process under this division. The person serving process shall locate the person to be served and shall tender a copy of the process and accompanying documents to the person to be served. When the copy of the process has been served, the person serving process shall endorse that fact on the process and return it to the clerk, who shall make the appropriate entry on the appearance docket.

When the person serving process is unable to serve a copy of the process within twenty-eight days, the person shall endorse that fact and the reasons therefor on the process and return the process and copies to the clerk who shall make the appropriate entry on the appearance docket. In the event of failure of service, the clerk shall follow the notification procedure set forth in division (A)(2) of this rule. Failure to make service within the twenty-eight day period and failure to make proof of service do not affect the validity of the service.

{¶ 10} Civ.R. 4.3(B)(2), "**Process; Out-of-state service**," provides, in pertinent part:

**(B) Methods of service.**

**(1) Service by clerk.** The clerk may make service of process or other documents to be served outside the state in the same manner as provided in Civ.R.4.1(A)(1) through Civ.R. 4.1(A)(3).

**(2) Personal service.** When ordered by the court, a "person" as defined in division (A) of this rule may be personally served with a copy of the process and complaint or

other document to be served. Service under this division may be made by any person not less than eighteen years of age who is not a party and who has been designated by order of the court to make personal service of process. On request, the clerk shall deliver the summons to the plaintiff for transmission to the person who will make the service. The person serving process shall locate the person to be served and shall tender a copy of the process and accompanying documents to the person to be served.

Proof of service may be made as prescribed by Civ.R. 4.1(B) or by order of the court. Failure to make service within the twenty-eight-day period and failure to make proof of service do not affect the validity of service.

{¶ 11} Loc.Dom.R. 41 provides:

With the approval of the Judges of the Court, any person or business entity may be approved as a special process server for the court.

Such person or business entity shall file a motion in the Juvenile Clerk's Office to be appointed as a special process server (for both Juvenile and Domestic cases) along with a proposed judgment entry to be presented to the Administrative Magistrate who will review and either return to the filer for revisions or present for approval to the Administrative Judge/Judges of the Court. The motion and entry shall comply with the provisions of Rules 4.1 and 4.3 of the Rules of Civil Procedure and/or Rule 16 of the Rules of Juvenile Procedure regarding personal service. The person or business entity shall pay a filing fee/security for costs of $35.00 as provided for in Domestic Local Rule 2/Juvenile Local Rule 14.

The judgment entry shall include the name of the business entity, if any, and list the names of all persons authorized to make service of process under the order. In the event there are any persons listed who are no longer employed by the business entity or are otherwise no longer affiliated with the business entity, or additional persons are to be included, a new motion and judgment entry shall be filed according to this rule.

All orders approving a person or business entity as a special process server shall expire one (1) year from the filing date of the last order. Upon the expiration of the order, the person or

business entity may file a new motion and judgment entry pursuant to this rule.

All instructions for service by a special process server submitted to the clerk shall be accompanied by a time-stamped copy of the order authorizing the person to serve process under this rule.

The return of service filed by the process server shall include that person's signature and the legibly printed or type-written name of the person making the return of service.

{¶ 12} In the present case, on April 19, 2018, wife filed a motion for an order to appoint a special process server, seeking to appoint Anchorage County Sheriff as special process server. On the same day, the trial court issued an order appointing a special process server, in which the court appointed Anchorage County Sheriff as special process server. The order does not specify what pleadings were to be served.

{¶ 13} Also on April 19, 2018, the clerk of courts for the Franklin County Common Pleas Court issued an order to serve to the Anchorage County Sheriff to serve husband with the ex parte CPO/petition. Above the typewritten Anchorage County Sheriff's server designation was handwritten "Anchorage Judicial Services."

{¶ 14} On April 24, 2018, the completed April 19, 2018 order to serve was filed with the court. It indicates the ex parte CPO and petition were served on April 23, 2018, by "J. Persinger AST/CSO."

{¶ 15} Husband contends the party designated by the clerk of courts in the April 19, 2018 order to serve was Anchorage Judicial Services, and the clerk of courts had no authority to issue an order for personal service to be made by a party other than the county sheriff pursuant to Civ.R. 4.1(B). Husband claims a special process server was not appointed in accordance with Civ.R. 4.3 and Loc.Dom.R. 41, which provides that a person or business entity may be approved as a special process server with a proposed judgment entry submitted to the administrative magistrate for review and approval. Husband also points out that Loc.Dom.R. 41 incorporates Civ.R. 4.3, and the judgment entry must state the name of the business entity and list the names of all persons authorized to make service of process under the order, and all instructions for service by a special process server must be accompanied by a time-stamped copy of the order authorizing the person

to serve process under Loc.Dom.R. 41. Here, husband argues, a motion and order appointing Anchorage Judicial Services was not filed and approved by the trial court, and a copy of the standing order was not attached to the instructions for service. Therefore, contends husband, it was error for the trial court to proceed with the full hearing absent proof of the perfection of personal service.

{¶ 16} We disagree with husband's arguments. With regard to Civ.R. 4.3(B), husband asserts the clerk of courts has no authority to issue an order for personal service to be made by a party other than the county sheriff. We fail to find this limitation anywhere in Civ.R. 4.3(B). Civ.R. 4.3(B) specifically allows for service to be made by any person not less than 18 years old who is not a party and who has been designated by order of the court to make personal service of process.

{¶ 17} Here, on April 19, 2018, wife filed a motion for an order appointing the Anchorage County Sheriff as special process server. On the same day, the trial court issued a ordering appointing the Anchorage County Sheriff as special process server. In the CPO, the trial court ordered the clerk of courts to serve husband a copy of the petition and CPO. The clerk of courts did so in the April 19, 2018 order to serve. In the order, the clerk commanded the Anchorage County Sheriff and Anchorage Judicial Services to serve the petition and CPO to husband. Service was returned on April 24, 2018, showing husband had been personally served on April 23, 2018. Although husband contests the clerk of courts' inclusion of Anchorage Judicial Services, in addition to the Anchorage County Sheriff, in the order to serve, when the trial court did not specifically mention Anchorage Judicial Services in its order appointing special process server, there is no evidence in the record as to the precise nature and identity of Anchorage Judicial Services and whether it is comprised of Anchorage County Sheriff officers and staff. Thus, we must find this argument without merit.

{¶ 18} Insofar as husband argues the trial court did not follow its own Loc.Dom.R. 41, this court, as well as others, have found that courts are given latitude in following their own local rules. As such, enforcement of such rules is generally within the sound discretion of the court. *See, e.g., Boggs v. Ohio Real Estate Comm.*, 186 Ohio App.3d 96, 2009-Ohio-6325, ¶ 42 (10th Dist.) (the enforcement of local court rules is well within the sound discretion of the court); *Silverman v. Am. Income Life Ins. Co. of Indianapolis*,

10th Dist. No. 01AP-338 (Dec. 18, 2001) (it is generally held a court has discretion to deviate from its own rules); *In re K.Z.*, 8th Dist. No. 107269, 2019-Ohio-707, ¶ 73, citing *Citibank, N.A. v. Katz*, 8th Dist. No. 98753, 2013-Ohio-1041, ¶ 29; *Dvorak v. Petronzio*, 11th Dist. No. 2007-G-2752, 2007-Ohio-4957, ¶ 30 (the enforcement of local rules is a matter within the discretion of the court promulgating the rules); *U.S. Bank N.A. v. Hill*, 6th Dist. No. OT-17-029, 2018-Ohio-4532, ¶ 62; *Katz* at ¶ 29 (finding that, as long as a trial court's failure to comply with or enforce its local rules does not affect due process or other constitutional rights, there is no error when, in its sound discretion, the court decides that the peculiar circumstances of a case require deviation from its own rules), citing *Dodson v. Maines*, 6th Dist. No. S-11-012, 2012-Ohio-2548, ¶ 47 (finding local rules are of the court's own making, procedural in nature, and not substantive principles of law; thus, there is no error when, in its sound discretion, the court decides the peculiar circumstances of a case require deviation from its own rules). Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 19} In the present case, even if the trial court violated its own Loc.Dom.R. 41 by finding proper service even though it failed to properly approve Anchorage Judicial Services as special process server and a copy of the standing order was not attached to the instructions for service, these alleged deficiencies did not affect husband's constitutional rights. Husband was still served with notice of the petition and hearing, had actual notice of the hearing, and had an opportunity to be heard. Therefore, we find the trial court did not abuse its discretion, in this respect. For the foregoing reasons, husband's first assignment of error is overruled.

{¶ 20} Husband argues in his second assignment of error the trial court erred when it did not have in personam jurisdiction over husband and was without authority to issue a CPO. The power of a state court to exert personal jurisdiction over a non-resident defendant is limited by the Due Process Clause of the Fourteenth Amendment. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 108-09 (1987). Due process requires that in order to subject a non-resident defendant to a judgment in personam, the non-resident must have certain minimum contacts with the forum, such

that notions of fair play and substantial justice are not offended by requiring him to defend in that forum. *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The test for minimum contacts may not be applied mechanically; rather, the facts of each case must be weighed to determine whether sufficient affiliating circumstances are present. *Kulko v. Superior Court of California*, 436 U.S. 84, 92 (1978), citing *Hanson v. Denckla*, 357 U.S. 235, 246 (1958).

{¶ 21} Ohio's long-arm statute, R.C. 2307.382, and the complementary civil rule, Civ.R. 4.3, authorize an Ohio court to exercise personal jurisdiction over a non-resident defendant and authorize out-of-state service to effectuate that jurisdiction. R.C. 2307.382 provides, in pertinent part:

> **(A)** A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> * * *
>
> **(3)** Causing tortious injury by an act or omission in this state;
>
> * * *
>
> **(6)** Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

{¶ 22} Civ.R. 4.3 provides, in pertinent part:

> **(A) When service permitted.** Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
>
> * * *

**(9)** Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state.

{¶ 23} Pursuant to R.C. 3113.31, a person who is subject to domestic violence may petition a court for a CPO. In order to obtain a CPO, the petitioner must prove by a preponderance of the evidence that the petitioner, petitioner's family, or petitioner's household members are in danger of domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. Former R.C. 3113.31(A), provides, in pertinent part:

**(1)** "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:

**(a)** Attempting to cause or recklessly causing bodily injury;

**(b)** Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code[.]

{¶ 24} "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson* at 253. This court has adopted a three-part test to analyze the existence of due process minimum contacts. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *See KB Circuits Inc. v. BECS Technology, Inc.*, 10th Dist. No. 00AP-621 (Jan. 18, 2001), citing *S. Machine Co., Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

{¶ 25} Threats of violence constitute domestic violence for purposes of R.C. 3113.31(A)(1)(b) if the fear resulting from the threat is reasonable. *Eichenberger v. Eichenberger*, 82 Ohio App.3d 809, 815 (10th Dist.1992). A court may determine the reasonableness of the petitioner's fear by reference to the parties' history and past acts of domestic violence. *Conkle v. Wolfe*, 131 Ohio App.3d 375, 383 (4th Dist.1998).

{¶ 26} In the present case, husband argues the trial court did not determine whether Ohio had long-arm jurisdiction over him. He points out that wife testified about him pushing her, but the evidence did not establish the pushing caused or could have caused bodily injury. He claims the record shows he made no threats of imminent serious harm while wife was in Ohio, and all events between them happened in Alaska.

{¶ 27} In support of his argument above, husband relies solely on *Burnett v. Burnett*, 6th Dist. No. S-10-050, 2012-Ohio-2673. Husband claims that in *Burnett*, the court of appeals found the trial court improperly issued a CPO when it lacked personal jurisdiction because the record showed that no act of domestic violence or threats occurred in the state of Ohio, and non-threatening phone calls from Florida to Ohio did not justify a CPO.

{¶ 28} However, husband somewhat mischaracterizes the holding in *Burnett*. In *Burnett*, the wife lived in Ohio and the husband lived in Florida. The wife petitioned for a CPO in Ohio. The magistrate determined the wife had failed to prove by a preponderance of the evidence any acts of alleged domestic violence occurred in Ohio that would give the court long-arm jurisdiction over husband pursuant to R.C. 2307.382(A). On objections, the parties stipulated the husband, while in Florida, made telephone calls and text messages to the wife, who was in Ohio; however, the record contained no evidence of the content of those telephone records and text messages. The trial court issued a CPO, concluding the husband sent text message threats to the wife while she resided in Ohio, which supported the fears expressed by the wife at the ex parte hearing. In reaching this conclusion, the court also considered evidence taken at a hearing regarding an incident at Detroit Metro airport. On appeal, the court of appeals reversed the trial court, finding there was no personal jurisdiction over the husband. The court concluded that, although the trial court found text messages and phone calls that the husband made to the wife were tortious in nature and, therefore, found husband had the minimum contacts with Ohio necessary for the court to exercise personal jurisdiction over him, the record contained no evidence as to the content of those text messages and phone calls. The court held that where a plaintiff has been granted a domestic violence CPO against a defendant, and the only basis for the defendant's connection to the state is through phone calls and electronic communication, some evidence as to the content of those communications is

essential to the affirmance of the trial court's order. The court also noted that, while the stipulation indicated that calls and text messages from husband to wife were made after wife moved to Ohio, the stipulation did not address the content of those communications.

{¶ 29} The present case is distinguishable from *Burnett*. The holding in *Burnett* was founded on the fact there was nothing in the record to indicate the content of the phone calls and text messages sent by the husband in Florida to the wife in Ohio. However, here, the record shows husband, while in Alaska, threatened wife via phone calls and text messages while she lived in Ohio. In her addendum to the petition for a CPO, wife detailed husband's history of abuse involving her and her son in Alaska soon after they married and she had relocated to Alaska. She stated husband pushed her on two occasions, once due to her inability to go on a family hike because of a knee injury, and he reinjured her knee and foot when he pushed her. About a month after she relocated to Alaska, husband crashed his company car and refused to call for medical attention for her and her daughter, even though she had injured her head, neck, and knee, and her daughter had injured her head and neck. In February 2018, husband pushed wife's son and almost ran over her and her son in their driveway, and she soon thereafter fled to Ohio. While she was in Ohio, husband texted her that her "day of reckoning" had arrived. He then e-mailed her and demanded she return to Alaska and admit she was the abuser. He e-mailed her again and stated she should give their baby up for adoption and agree to a dissolution in Alaska, or he would report that she abused him. She stated her husband also threatened her and demanded she stop communicating with his company's investigator. Wife stated in her petition that husband texted her and asked for her address, but she refused to give it to him. Wife stated that husband has the resources to come find her, and he told her that she will never leave him.

{¶ 30} At the CPO hearing, the trial court asked wife why she was in imminent fear of husband when he lives in Alaska. Wife testified that husband travels to the continental United States frequently, and he has the financial means to come to her address, and he has attempted to get her address multiple times via text or e-mail. Wife stated that husband is very angry, and he had physically abused her for the five months she lived in Alaska. She said she is four months pregnant with his child. Wife also testified that husband is trying to get her to agree to terms of a dissolution, and that is why she feels

physically threatened. She thinks he will show up at her house and force her to sign a dissolution. She said their past altercations escalated fast, and she would be afraid she would not have time to call police if he showed up at her house.

{¶ 31} Based on the above evidence in the record, we find husband had minimum contacts with Ohio, such that notions of fair play and substantial justice were not offended by requiring him to defend in Ohio. Wife sufficiently demonstrated husband placed her in fear of imminent serious physical harm by threat of force. Wife's fear, given husband's past violence and history of threats of violence was reasonable. Therefore, we find the trial court had in personam jurisdiction over husband and had authority to issue a CPO. Husband's second assignment of error is overruled.

{¶ 32} Husband argues in his third assignment of error the trial court erred when it refused to grant him a continuance and denied him the opportunity to fully participate in the CPO hearing. R.C. 3113.31(D)(2)(a) provides that:

> If the court, after an ex parte hearing, issues an order described in division (E)(1)(b) or (c) of this section, the court shall schedule a full hearing for a date that is within seven court days after the ex parte hearing. If any other type of protection order that is authorized under division (E) of this section is issued by the court after an ex parte hearing, the court shall schedule a full hearing for a date that is within ten court days after the ex parte hearing. The court shall give the respondent notice of, and an opportunity to be heard at, the full hearing. The court shall hold the full hearing on the date scheduled under this division unless the court grants a continuance of the hearing in accordance with this division. Under any of the following circumstances or for any of the following reasons, the court may grant a continuance of the full hearing to a reasonable time determined by the court:
>
> (i) Prior to the date scheduled for the full hearing under this division, the respondent has not been served with the petition filed pursuant to this section and notice of the full hearing.
>
> (ii) The parties consent to the continuance.
>
> (iii) The continuance is needed to allow a party to obtain counsel.
>
> (iv) The continuance is needed for other good cause.

{¶ 33} Loc.Dom.R. 4(H) provides:

> All motions for continuance or advancement must be on a form promulgated by the court and must:
>
> 1. State the reason for the request, and if the request is being made due to a conflict with another case, contain the name, case number, type of case (civil or criminal), name of the Judge and county where the case is scheduled, and the date and time the case is assigned for trial. A copy of the scheduling notice should be attached to the request;
>
> 2. Contain the filing date of the case or pending motion;
>
> 3. State the number of times the case or motion has been continued;
>
> 4. Reflect the approval of opposing counsel or pro se party unless otherwise excused by the judge or magistrate. If the opposing counsel or pro se party does not consent to the continuance a conference shall be scheduled with the assigned judge or magistrate to resolve the continuance motion. **No case may be continued by agreement of counsel or the parties without permission of the assigned judge or magistrate.**

(Emphasis sic.)

{¶ 34} Here, husband argues he made a reasonable effort to obtain a continuance so he could meaningfully participate in the full CPO hearing. He argues he received notice in Alaska of the April 26, 2018 hearing on April 24, 2018, which is not a reasonably sufficient time to allow him to appear and hire local counsel. He claims he acted reasonably in trying to continue the CPO hearing by initiating telephone calls to the trial court to request a continuance.

{¶ 35} However, the record contains no evidence to support any of the four criteria in R.C. 3113.31(D)(2)(a). Husband was properly served, the parties did not consent to a continuance, there is nothing in the record to indicate husband sought a continuance to obtain counsel, and there is nothing in the record showing other good cause for a continuance. Husband also failed to file a motion for continuance in accordance with Loc.Dom.R. 4(H).

{¶ 36} Importantly, the only evidence we have in the entire record before us regarding husband's failure to appear at the full CPO hearing is the following:

> JUDGE BROWNE: Okay. All right. Very good. Good morning. Aaron apparently called -- he -- apparently, he's [*sic*] still resides in Alaska and indicated he was not gonna be here today.

(Apr. 26, 2018 Tr. at 3-4.)

{¶ 37} Clearly, this very brief passage does not provide the type of evidence even necessary to support husband's arguments regarding his alleged desire for a continuance, much less that necessary to support grounds for any error in not granting such. For these reasons, we overrule husband's third assignment of error.

{¶ 38} Husband argues in his fourth assignment of error the trial court's decision to grant the CPO was against the manifest weight of the evidence. Whether to grant a CPO lies within the sound discretion of the trial court. *Martin v. Martin*, 10th Dist. No. 13AP-171, 2013-Ohio-5703, ¶ 6, citing *Daughtry v. Daughtry*, 10th Dist. No. 11AP-59, 2011-Ohio-4210, ¶ 5. An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore* at 219.

{¶ 39} An appellate court reviews a trial court's granting of a CPO to " 'determine whether sufficient, credible evidence supports a finding that the respondent had engaged in acts or threats of domestic violence.' " *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, ¶ 15 (10th Dist.), quoting *Kabeer v. Purakaloth*, 10th Dist. No. 05AP-1122, 2006-Ohio-3584, ¶ 7. Thus, we will not reverse the trial court's granting of the CPO as being against the manifest weight of the evidence so long as some competent, credible evidence goes to the essential elements of the case. *Id.*, citing *Kabeer* at ¶ 7. Moreover, if the evidence is susceptible to more than one interpretation, the appellate court must construe the evidence consistently with the trial court's judgment. *Id.*, citing *Kabeer* at ¶ 7.

{¶ 40} In the present case, we have already discussed the definition of domestic violence, pursuant to former R.C. 3113.31(A)(1)(a) and (b), and the evidence presented in this case. Husband terms the evidence presented as "ambiguous at best." Husband claims the bodily injury complained of by wife consisted of a pre-existing injury, and there was no evidence that he ever struck her. He also claims that wife's claim that he became angry

enough to hurt her because she refused to go hiking with the family is "preposterous." However, as detailed above, in her addendum to the petition for a CPO, wife explained the abuse husband inflicted on her in the months after she moved to Alaska after the couple married. After wife returned to Ohio, husband threatened her via text messages and e-mail. At the CPO hearing, wife explained why she was in imminent fear of husband, his anger toward her, and his history of physical abuse when they lived in Alaska. Husband's argument that there was no evidence he ever "struck" wife is of little consequence given his history of pushing wife, and his bald denial that he would hurt his wife merely because she could not go hiking is unpersuasive. Husband failed to appear at the full CPO hearing to present any evidence to support his version of the circumstances, and his contentions at this late juncture on appeal are insufficient, particularly given our duty to construe the evidence consistent with the trial court's judgment. Therefore, we find there was competent, credible evidence that husband placed wife in fear of imminent serious physical harm by the threat of force, and the trial court did not err when it granted the CPO. For these reasons, we overrule husband's fourth assignment of error.

{¶ 41} Accordingly, husband's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____