[Cite as *Hamon v. Weeks*, 2021-Ohio-1770.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

MARY HAMON,

     PETITIONER-APPELLEE,          CASE NO.  9-20-33

     v.

JAMES WEEKS,                    O P I N I O N

     RESPONDENT-APPELLANT.

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2020 DV 0039

**Judgment Affirmed**

**Date of Decision:  May 24, 2021**

APPEARANCES:

    *Rocky Ratliff* **for Appellant**

    *Staci K. Thomas* **for Appellee**

Case No. 9-20-33

**ZIMMERMAN, J.**

{¶1} Respondent-appellant, James Weeks ("Weeks") appeals the judgment of the Marion County Common Pleas Court, Family Division, granting petitioner-appellee, Mary Hamon ("Hamon"), a domestic violence civil protection order ("CPO") pursuant to R.C. 3113.31 against Weeks. We affirm.

{¶2} Weeks and Hamon are an ex-boyfriend and ex-girlfriend who resided together in 2018 through November 2019. (July 30, 2020 Tr. at 3); (Aug. 12, 2020 Tr. at 4-5).

{¶3} On July 30, 2020, Hamon filed a *pro se* petition for a domestic violence CPO against Weeks requesting the trial court to issue an *ex parte* (emergency) CPO.[1] (Doc. No. 1). The trial court conducted an *ex parte* hearing, and issued a domestic violence CPO on the same date (effective until October 30, 2020). A full hearing on the petition was scheduled for August 12, 2020.[2] (Doc. No. 2).

---

[1] Hamon filed her domestic violence CPO petition following resolution of Weeks's criminal cases arising out of Marion County Municipal Court wherein Weeks pleaded guilty to two cases involving violations of a protection order in case numbers CRB2000755 and CRB2000850 (of which Hamon was the victim), and consistent with plea negotiations, the remaining two counts of violations of a protection order in case numbers CRB2000444 and CRB2000465 (with Hamon also the victim) were dismissed. (Doc. No. 1); (July 30, 2020 Tr. at 3-4). (*See* Petitioner's Exs. B, C). At the time of the *ex parte* hearing, Hamon testified that there was a stalking CPO that recently expired and a temporary protection order pursuant to Weeks's municipal court cases that extinguished at Weeks's sentencing hearing leaving only a "stay away order". (July 30, 2020 Tr. at 4-5). Weeks was ordered to serve jail time as a result of his criminal offenses, although the exact amount of days he was ordered to serve were unknown to the Family Division at the time of the *ex parte* hearing. (*Id.*). The *ex parte* CPO hearing was conducted by a magistrate. (July 30, 2020 Tr.).

[2] Weeks was personally served with the trial court's *ex parte* domestic violence CPO on July 30, 2020 by the Marion County Sheriff's Department, although the exact location of service is not identified in the service return. (Doc. No. 3).

{¶4} The trial court conducted its full hearing on the petition on August 12, 2020 with Hamon testifying in support of her request before the trial judge. (Aug. 12, 2020 Tr.). The trial court, then, issued its ruling from the bench granting the CPO. (*Id.* at 22). On August 13, 2020, the trial court journalized the domestic violence CPO against Weeks, which would remain in effect for five years. (Doc. No. 4).

{¶5} Weeks timely appealed and asserts two assignments of error, which we will address together. (Doc. No. 9).

**Assignment of Error No. I**

**The Trial Court Erred by Applying the Incorrect Standard when Issuing a Domestic Violence Civil Protection Order and Neither Competent Nor Credible Evidence Supported a Finding of an Imminent Fear of Serious Physical Harm.**

**Assignment of Error No. II**

**The Trial Court Erred When It Granted a Domestic Violence Civil Protection Order Because Appellee Failed to Establish Any Relationship as a Former Spouse.**

{¶6} In his first assignment of error, Weeks asserts that the trial court erred by not applying the correct standard as to Hamon's petition. Specifically, Weeks argues that the trial court's findings as to Hamon's "imminent fear of serious physical harm" are not supported by competent, credible evidence. In his second assignment of error, Weeks argues that the trial court erred in granting Hamon's petition for a protection order against him, and thus, abused its discretion.

Specifically, Weeks asserts that there was not competent, credible evidence to support the trial court's determination as to the relationship status of the parties.

*Standard of Review*

{¶7} We review the trial court's decision to grant or deny a CPO under an abuse-of-discretion standard. *Montgomery v. Kleman*, 3d Dist. Union No. 14-19-04, 2019-Ohio-4526, ¶ 8, citing *Jenkins v. Douglas*, 3d Dist. Marion No. 9-06-55, 2007-Ohio-1909, ¶ 7; *Kramer v. Kramer*, 3d Dist. Seneca No. 13-02-03, 2002-Ohio-4383, ¶ 11. An abuse of discretion connotes that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. *Ross v. Ross*, 64 Ohio St.2d 203, 204 (1980); *Warnecke v. Whitaker*, 3d Dist. Putnam No. 12-11-03, 2011-Ohio-5442, ¶ 12, citing *Ross* at 204 and *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 280 (1978).

*Analysis*

{¶8} We begin with Weeks's contention that the trial court abused its discretion when it issued a domestic violence CPO determining Hamon to be his "former spouse" under R.C. 3113.31(A)(3)(a)(i). R.C. 3113.31 sets forth the statutory definitions and procedure to obtain a domestic violence CPO. *See also* Civ.R. 65.1(B) ("Any terms used in this rule which are also specifically defined in

-4-

R.C. 3113.31 * * * shall have the same definition in applying the provisions of this rule in those special statutory proceedings."). "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. R.C. 3113.31 defines "[d]omestic violence" as:

> (a) The occurrence of one or more of the following acts against a family or household member:
>
> (i) Attempting to cause or recklessly causing bodily injury;
>
> (ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
>
> (iii) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;
>
> (iv) Committing a sexually oriented offense.
>
> (b) The occurrence of one or more of the acts identified in divisions (A)(1)(a)(i) to (iv) of this section against a person with whom the respondent is or was in a dating relationship.

R.C. 3113.31(A)(1)(a)-(b).

{¶9} "'Threats of violence constitute domestic violence for the purpose of R.C. 3113.31 if the fear resulting from those threats is reasonable.'" *McGuire v. Sprinkle*, 12th Dist. Warren No. CA2006-06-069, 2007-Ohio-2705, ¶ 15, quoting *Lavery v. Lavery*, 9th Dist. Summit No. 20616, 2001 WL 1545663, *2 (Dec. 5,

2001). "The reasonableness of the fear should be determined with reference to the history between the petitioner and the defendant." *Gatt v. Gatt*, 9th Dist. Medina No. 3217-M, 2002-Ohio-1749, *2 (Apr. 17, 2002), citing *Eichenberger v. Eichenberger*, 82 Ohio App.3d 809, 816 (10th Dist.1992). "[I]n order to grant a civil protection order, past acts alone are not enough and there must be some evidence of current domestic violence, as set forth in the statute." *Sprinkle* at ¶ 22.

{¶10} R.C. 3113.31(A) identifies several categories of protected classes of persons who make seek domestic violence CPO's, including:

"Family or household member" defined under the statute as:

(a) Any of the following who is residing with or has resided with the respondent:

(i) A spouse, a person living as a spouse, or a former spouse of the respondent;

(ii) A parent, a foster parent, or a child of the respondent, or another person related by consanguinity or affinity to the respondent;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the respondent, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the respondent.

(b) The natural parent of any child of whom the respondent is the other natural parent or is the putative other natural parent.

(4) "Person living as a spouse" means a person who is living or has lived with the respondent in a common law marital relationship, who otherwise is cohabiting with the respondent, or who otherwise has cohabited with the respondent within five years prior to the date of the alleged occurrence of the act in question.

R.C. 3113.31(A)(3)(a)-(b), (4). The phrase "[d]omestic violence" also includes those with whom the respondent is or was in a "[d]ating relationship".[3]    R.C. 3113.31(A)(8).

{¶11} Here, Weeks argues that Hamon was without standing to bring a domestic violence CPO petition predicated on the classification that she is a "[f]amily or household member".[4] Specifically, Weeks asserts that Hamon does not fall within the protected class of individuals that are considered "[f]amily or household member[s]" under R.C. 3113.31(A)(3)(a)(i) because she is not his "former spouse", but rather his ex-girlfriend. (*See* July 30, 2020 Tr. at 3); (Aug. 12, 2020 Tr. at 4-5); (Doc. Nos. 1, 2, 4). Thus, according to Weeks, because Hamon does not fall within this particular protected class, she lacked standing to bring the petition in the first instance.

{¶12} Even if we assume without deciding that the trial court erred in its determination as to Hamon's designation as a "former spouse" of Weeks, in our review of the record, Hamon meets the criteria for the protected class under R.C.

---

[3] R.C. 3113.31(8) defines a "[d]ating relationship" as "a relationship between individuals who have, or have had, a relationship of a romantic or intimate nature." It "does not include a casual acquaintanceship or ordinary fraternization in a business or social context." R.C. 3113.31(8). Moreover, R.C. 3113.31(9) defines a "[p]erson with whom the respondent is or was in a dating relationship" as "an adult who, at the time of the conduct in question, is in a dating relationship with the respondent who also is an adult or who, within the twelve months preceding the conduct in question, has had a dating relationship with the respondent who also is an adult."

[4] The trial court's designation of Hamon as a "[f]amily or household member" is in and of itself a factual finding. To the extent that Weeks is arguing that the trial court is required to make additional findings in support of its determination that Hamon falls within the protected class under R.C. 3113.31(A)(3)(a)(i), is specious. We find no such requirement under Ohio law. *See* Civ.R. 65.1; R.C. 3113.31.

3113.31(A)(3)(a)(i) in that she was "a person living as a spouse" under the facts presented. (*See* Aug. 12, 2020 Tr. at 4-5). Moreover, Weeks does not dispute that he and Hamon were previously in a "[d]ating relationship" as set forth by R.C. 3113.31(A)(8)-(9) nor does he contest that this determination was supported by competent, credible evidence in the record. (*See* Appellant's Brief); (Aug. 12, 2020 Tr. at 4-5).

{¶13} Harmless errors are those errors, which do not affect substantial rights, and must be disregarded by the reviewing court. Civ.R. 61; R.C. 2309.59. Here, we conclude that any error that the trial court may have made in its determination as to the particular classification involving Hamon's status constitutes, at worst, harmless error.

{¶14} Next, we address Weeks's assertion that the trial court erred in its determination as to the imminence of Hamon's fear of serious physical harm by Weeks. Essentially, Weeks argues that Hamon's fear was unreasonable given the history of the couple. We disagree.

{¶15} "A court may determine the reasonableness of the petitioner's fear by reference to the parties' history and past acts of domestic violence." *Peterson v. Butikofer*, 10th Dist. Franklin No. 18AP-364, 2019-Ohio-2456, ¶ 25, citing *Conkle v. Wolfe*, 131 Ohio App.3d 375, 383 (4th Dist.1998). Importantly, the record reveals that Weeks was not present at the full hearing on Hamon's petition to present any

evidence in support his version of the facts because *he was in jail for violating Hamon's stalking CPO issued by another court.* (Aug. 12, 2020 Tr. at 18); (Petitioner's Exs. B, C). Moreover, Weeks was served with Hamon's petition while in jail. (*See* Doc. No. 3); (July 30, 2020 Tr. at 5). Clearly, Week's violation of a CPO is some evidence of his conduct towards' Hamon in the immediate past.

{¶16} Even though Weeks asserts that there is no evidence that he physically "struck" Hamon, this assertion lacks significance given his history of violence with Hamon. The record supports that Hamon was in imminent fear of Weeks by virtue of his temper and propensities to threats. (Aug. 12, 2020 Tr. at 5-6). Hamon testified that Weeks would scream at her with such force that spittle would fly out his mouth onto her face. (*Id.* at 6). She further testified that in December 2019 that Weeks slammed a door shut in her face. (*Id.* at 7). She also testified that Weeks often threw items at her while angry that would sometimes strike her. (*Id.*). According to Hamon, after Weeks threated that she would never see her son again, and that, she was going to get her jaw broken, she filed for a stalking CPO. (*Id.* at 10-11).

{¶17} Moreover, Hamon testified that Weeks violated that stalking CPO *four times.* (*Id.* at 12-14); (*See* Petitioner's Exs. B, C). She testified Weeks's violations resulted in criminal charges and the issuance of a temporary protection order ("TPO"). (*Id.*). (*See* July 30, 2020 Tr. 5); (Petitioner's Exs. B, C). She further

testified that the basis for those incidents involved Weeks's calls and texts threatening to physically harm her. (Aug. 12, 2020 Tr. at 13-14). Hamon also testified that Weeks was contacting third parties through social media and texts reiterating his threats. (*Id.* at 13). According to Hamon, at the time of the domestic violence CPO hearing she was afraid of Weeks, and that without the domestic violence CPO, she believed Weeks would harm her and continue to threaten to harm her because her stalking CPO had expired and her TPO extinguished at Weeks's sentencing hearing. (*Id.* at 18-19).

{¶18} Hence, we conclude there is competent, credible evidence supporting the trial court's determination that Weeks placed Hamon in fear of imminent serious physical harm by the threat of force. Moreover, we cannot conclude based on the facts presented that Hamon's fears were unreasonable in light of Weeks's behavior.

{¶19} For these reasons, we cannot conclude that the trial court abused its discretion in granting Hamon's domestic violence CPO petition, and thus subsequently issuing the domestic violence CPO.

{¶20} Accordingly, Weeks's assignments of error are overruled.

{¶21} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**