[Cite as *B.B. v. J.B.*, 2023-Ohio-1870.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

B.B.,                                                   :

    Petitioner-Appellee,                      :

                                                      No. 22AP-305
v.                                                      :      (C.P.C. No. 22DV-0238)

J.B.,                                                   :      (REGULAR CALENDAR)

    Respondent-Appellant.              :

---

D E C I S I O N

Rendered on June 6, 2023

---

**On brief:** *Jon Klein*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

PER CURIAM.

{¶ 1} Respondent-appellant, J.B., appeals a judgment from the Franklin County Court of Common Pleas, Division of Domestic Relations, granting the petition for a civil protection order filed by petitioner-appellee, B.B., on behalf of herself and the parties' five minor children. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On February 9, 2022, B.B. ("appellee"), filed a petition and affidavit for an ex parte civil protection order for herself and her five minor children against her husband and the children's father, J.B. ("appellant"). The parties have six children, S.B., who is an adult[1],

---

[1] On February 9, 2022, S.B. submitted a separate petition for a domestic violence civil protection order, which is not before this court.

H.B. (d.o.b. 01/04/2008), G.B. (d.o.b. 08/27/2010), D.B. (d.o.b. 02/11/2012), I.B. (d.o.b. 03/19/2014), and I.B. (d.o.b. 05/26/2016). Appellee was pregnant at the time the petition was filed. The trial court issued a temporary domestic violence civil protection order on February 9, 2022, modified the order for clerical errors that same day, and then scheduled a full hearing for February 16, 2022.

{¶ 3} The trial court conducted a full evidentiary hearing pursuant to R.C. 3113.31 over the course of five days on March 31, April 18, April 19, April 25, and April 26, 2022. In those five days, the court heard testimony from appellee, appellant, S.B., and H.B. On May 9, 2022, the court issued an order of protection and accompanying findings of fact.

{¶ 4} In reaching its findings, the trial court noted the parties' volatile and intense home environment and relationship. While appellee worked, appellant remained home to homeschool their children. The trial court found credible testimony that appellant exercised "control" over the home and the family. The entire family resided on the main floor of their multi-story home, which appellee testified was done so appellant could restrict and control the general movement and activities of the family. (Mar. 31, 2022 Tr. Vol. 1 at 11.) The trial court also heard testimony that the children rarely leave the home, and that appellee is seldomly allowed to take all of the children out of the house at the same time.

{¶ 5} The trial court found that appellant consumes large amounts of alcohol daily, after S.B. testified that appellant would drink a liter of whiskey each day. (Tr. Vol. 3 at 332.) The trial court records further showed that appellant keeps at least ten guns at home, with one or two guns always loaded. There was testimony that the guns were not locked away and were kept around the house for ease of use. Appellant also kept a gun holstered on him during the day.

**{¶ 6}** The trial court found that appellant regularly attempted to desensitize his children to violence by telling them graphic and gory stories and by encouraging them to play violent video games. Appellant revered the Nazi regime and Joseph Goebbels, particularly how Goebbels killed his family and himself rather than face capture at the end of World War II. The trial court heard testimony that appellant stated on several occasions that he would never let his children be taken by child protective services and that he would kill his children and himself before that would happen, similar to Goebbels. (Tr. Vol. 3 at 320-23.)

**{¶ 7}** The trial court found that appellant exhibited a lengthy pattern of intimidating and threatening behavior toward appellee and their children. This included appellant interrogating appellee in the basement, making her believe that appellant prohibited her from leaving or else she would suffer repercussions. The trial court found there were also repeated instances of verbal aggressions by appellant, calling his children derogatory names like "little shits" and "mother fuckers," and calling appellee "slit," "cunt," "fuckup", dumb fuck," and "queef." (May 9, 2022 Jgmt. at 10.) Appellant sent numerous graphic and intimidating text messages to appellee, including:

> Enjoy this Christmas you cucking cunt
>
> It's the last one you're going to enjoy in a real house with a real front/back yard and a real husband
>
> But the time I'm done paying you back….
>
> Next Christmas
>
> If you weren't a slit
>
> I would have already put you on the deck
>
> Shitting blood

Because of one roundhouse kick, from me, broke three of your ribs and pushed them into your intestines

You're fucked.

You're not the first one who fucked with the wrong one, pug.

I'm not the only one who isn't a liar or a punk but your whore mother should have taught you to only fuck with YOUR own kind

Some men you shouldn't fuck with.

Like Clint Eastwood said

You ever fuck with someone you shouldn't have fucked with? That's me.

Revenge is a dish best served cold.

I know you're a fuck up, so you're going to make us make the 6 o'clock news

So be it. If that's my fate: no, man, not even a man like me, can escape fate.

Get your last digs in while you can

Time's about up

(Trial Court Ex. B.)

**{¶ 8}** The trial court found credible evidence that on August 28, 2021, there was an incident in which appellant loaded a gun and demanded appellee drive him to his mother's house. Appellant threatened in front of all of the parties' children to shoot his mother and her paramour and that he would put appellee "on the deck shitting blood." (Tr. Vol. 1 at 32 and Tr. Vol. 2 at 111.)

**{¶ 9}** From February 2, 2022, there was an audio-recorded heated argument between appellant and appellee after which appellee left the home with her children. Statements from appellant during this incident included:

> You're lucky I didn't cut your fucking head off, bitch... I don't know how the hell I controlled myself not to blow your face to the back of your head, or mine, or mine!
>
> I'm an ex-marine, if I wanted to blow your face to the back of your head you wouldn't even know what happened.
>
> I don't know how I didn't fucking snap your neck. I don't know how I control myself not to crush your esophagus.

(Trial Court Ex. A.)

The trial court noted that appellant called appellee several derogatory names in the 90-minute recording and that at times more than one of the children could be heard crying and trying to intervene.

{¶ 10} The trial court found that there was a history of physical violence toward appellee based on appellee's testimony that appellant has choked her, forcibly poked her in the eye, put her in a "sleeper hold," boxed her ears, "knife handed" by striking her in the neck, and held her against the wall by her neck. The trial court also found concerning physical conduct by appellant toward the children. S.B. and H.B. attested that appellant squeezed one child to the point where the child yelled that he could not breathe, shoved one child across the room, held the children upside down by the ankles, and regularly got in the children's faces and yelled at them. The court found that S.B. and H.B. credibly testified that they were afraid appellant would snap and kill their mother and then kill the rest of the family and himself.

{¶ 11} The court found that appellee credibly testified that she believed the appellant's statements to her were of a threatening nature against her life. The trial court noted that:

> [Appellee] has proven by a preponderance of the evidence that [appellant] has placed her in fear of imminent physical harm and has committed domestic violence against the [appellee].

[Appellee] has further proven by a preponderance of the evidence that [Appellant] has placed the parties five (5) minor children in fear of imminent physical harm. Furthermore, this fear is objectively reasonable given the circumstances of this case. A Domestic Violence Civil Protection Order is necessary to protect them from further and/or future domestic violence.

{¶ 12} On August 18, 2022, appellant filed this appeal, arguing the following assignments of error:

I. A domestic violence civil protection order against father pursuant to R.C. 3113.31 was against manifest weight of evidence.

II. The trial court erred in finding that the five children were victims of domestic violence in need of a domestic civil protection order.

## II. ANALYSIS

{¶ 13} We now consider appellant's arguments against the trial court's domestic-violence civil protection order. In appellant's first assignment of error, he argues that the trial court's ruling granting appellee's petition for a civil protection order was against the manifest weight of the evidence. We do not agree.

{¶ 14} Under R.C. 3113.31, "a person who is subject to domestic violence may petition a court for a [civil protection order]." *Peterson v. Butikofer*, 10th Dist. No. 18AP-364, 2019-Ohio-2456, ¶ 23. "[T]he petitioner must prove by a preponderance of the evidence that the petitioner, petitioner's family, or petitioner's household members are in danger of domestic violence." *Id.*, citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. As set forth in R.C. 3113.31(A)(1), domestic violence is defined as the occurrence of at least one of the following: "(i) [a]ttempting to cause or recklessly causing bodily injury; (ii) [p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or

2911.211 of the Revised Code; (iii) [c]ommitting any act with respect to a child that would result in the child being an abused child as defined in section 2151.031 of the Revised Code; and (iv) [c]ommitting a sexually oriented offense." "Domestic violence" also includes the occurrence of one or more of these acts against a person with whom the respondent is or was in a dating relationship. R.C. 3113.31(A)(1)(b).

{¶ 15} A petitioner seeking a civil protection order must prove domestic violence or a threat of domestic violence by a preponderance of the evidence. *Johnson v. Auls*, 10th Dist. No. 08AP-286, 2008-Ohio-6123, ¶ 5, citing *Felton*, paragraph two of the syllabus.

{¶ 16} For the purposes of R.C. 3113.31, the threat of force constitutes domestic violence if the fear from those threats is reasonable. *Fleckner v. Fleckner*, 10th Dist. No. 07AP-988, 2008-Ohio-4000, ¶ 21, quoting *Lavery v. Lavery*, 9th Dist. No. 20616, 2001 Ohio App. LEXIS 5360, *4-5 (Dec. 5. 2001). Courts use both a subjective and objective test to determine the reasonableness of the petitioner's fear. The subjective test "inquires whether the respondent's threat of force actually caused the petitioner to fear imminent serious physical harm." *Fleckner* at ¶ 23. The objective test looks at "whether the petitioner's fear is reasonable under the circumstances (that is, whether the respondent's threat would cause a reasonable person to fear imminent [unconditional, non-contingent] serious physical harm)." *Id.*

{¶ 17} "An appellate court reviews a trial court's granting of a [civil protection order] to ' "determine whether sufficient, credible evidence supports a finding that the respondent had engaged in acts or threats of domestic violence." ' " *Peterson* at ¶ 39, quoting *Fleckner* at ¶ 15, quoting *Kabeer v. Purakaloth*, 10th Dist. No. 05AP-1122, 2006-Ohio-3584, ¶ 7. "[W]e will not reverse the trial court's granting of the [civil protection order] as being against the manifest weight of the evidence so long as some competent, credible evidence

goes to the essential elements of the case." *Id.* "[I]f the evidence is susceptible to more than one interpretation, [we] must construe the evidence consistently with the trial court's judgment." *Id.*

{¶ 18} Here, we do not find that the domestic violence civil protection order was against the manifest weight of the evidence. Appellant makes a range of arguments that attempt to discredit witness testimony at the trial court. For instance, appellant argues that he is a "bull shitter" and that appellee has been married to him for a long time and knows this, so she is not really in fear for her life. Appellant argues that many of his text messages were ambiguous and, in fact, indicate that he was not going to do anything. He also argues that appellee's text messages, in which she professed her love to him, were inconsistent with someone who imminently feared for her life. (Appellant's Brief at 13.)

{¶ 19} While we must consider the credibility of witnesses in conducting a manifest-weight review, we are guided by the presumption that the trial court, which heard the testimony and was able to observe the witnesses' demeanors, inflections, gestures, and mannerisms, is in the best position to judge the witnesses' credibility. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 20} In this case, the trial court found that appellee, S.B., and H.B. provided credible witness testimony and that appellant, on the other hand, did not. The trial court found appellee's testimony credible, including her testimony that she sent text messages stating her love for appellant in order to appease him and make his mood better. Based in part on his demeanor and voice inflections, the trial court found appellant's testimony "doubtful" and that he was "prone to telling fictious stories and embellishing to achieve what he wants in that moment." (Jgmt. at 16). We are not persuaded by appellant's

argument that would have us set aside the trial court's determination of the witnesses' credibility.

{¶ 21} Our review of the record also leads us to conclude that there is sufficient credible evidence that appellant had engaged in acts or threats of domestic violence warranting the domestic violence civil protection order. Two specific incidents leading up to appellee filing a petition for a domestic violence civil protection order include: (1) the August 2021 incident in which appellant loaded a gun and threatened to kill his mother and her paramour, while also threatening appellee when she refused to drive him to their house; and (2) the volatile argument recorded on February 2, 2022, when appellant made threatening statements that resulted in appellee leaving the home with the children.

{¶ 22} Appellee credibly testified to numerous troubling incidents in the home with appellant, including appellant holding her against the wall by the neck, forcibly poking her in the eye, "knife-handing" her in the neck, placing her in "chokeholds," and subjecting her to lengthy interrogations, laced with aggressively violent language, while in the basement of their home.

{¶ 23} Further, Appellant repeatedly sent appellee threatening text messages, calling her derogatory names. Multiple members of the family testified that appellant idolized Joseph Goebbels and that they feared he would snap and kill appellee and then kill the rest of the family to prevent the children being taken into custody. Appellant characterizes many of these fears as "speculation" and "ridiculous" and argues that they do not support the family members' alleged fears of imminent harm. We do not agree.

{¶ 24} The trial court " 'may consider past acts to determine whether the incident at issue constitutes domestic violence, the issuance of a civil protection order cannot be based solely on previous incidents of alleged domestic violence.' " *E.W. v. T.W.*, 10th Dist. No.

16AP-88, 2017-Ohio-8504, ¶ 36, quoting *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, ¶ 23, citing *Bruner v. Bruner*, 7th Dist. No. 99 C.A. 285, 2000 Ohio App. LEXIS 4385. However, " 'imminence does not require an offender to carry out a threat immediately or be in the process of carrying it out [b]ecause civil protection orders are intended to prevent violence before it happens.' " *M.D. v. M.D.*, 8th Dist. No. 106581, 2018-Ohio-4218, ¶ 68-73, quoting *Young v. Young*, 2d Dist. No. 2005-CA-19, 2006-Ohio-978, ¶ 105. Under R.C. 3113.31, the critical inquiry in determining whether the threat was "imminent" is " ' "whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent) serious physical harm." ' " *T.S. v. B.S.*, 10th Dist. No. 18AP-302, 2018-Ohio-4987, ¶ 24, quoting *Fleckner* at ¶ 20, quoting *Maccabee v. Maccabee*, 10th Dist. No. 98AP-1213, 1999 Ohio App. LEXIS 2992, *6 (June 29, 1999).

{¶ 25} Appellee offered credible witness testimony and evidence through an audio recording and submission of text messages of threatening and volatile behavior by appellant that would place a reasonable person in fear of imminent serious physical harm. This included the evidence of prior incidents in which appellant used force against her and appellant's continuing to make threatening statements and exhibit volatile behavior, as established by the August 2021 and February 2022 incidents.

{¶ 26} We now turn to appellant's second assignment of error pertaining to the five minor children. We are similarly not persuaded by appellant's arguments. The trial court found two of the couple's children provided credible testimony about the state of the family home. This included testimony that appellant is controlling and "gets into the children's faces and yells at them" as well as testimony of physical conduct toward the children, like holding some of the children upside down by their ankles and shoving and violently shaking some of the children. S.B.'s testimony also reflected that appellant had squeezed one of his

children to the point they would cry out that they could not breathe—to which appellant responded, "No, I know you can breathe because I have choked out motherfuckers bigger than you before and I know if you can or can't breathe, so don't be a pussy." (Tr. Vol. 3 at 271.) The trial court also determined that S.B. and H.B. credibly testified that they feared appellant would snap and kill appellee and would then kill the rest of the family to prevent them from being taken into the custody of child protective services.

**{¶ 27}** After having reviewed the complete record, we conclude that the record contains competent, credible evidence to support the trial court's issuance of a domestic violence civil protection order in this case. Consequently, we find that the decision to grant the petition for a domestic violence civil protection order for appellee and her five minor children was not against the manifest weight of the evidence.

## III. CONCLUSION

**{¶ 28}** For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations is hereby affirmed.

*Judgment affirmed.*

JAMISON, BOGGS, and EDELSTEIN, JJ., concur.